**STATE of Iowa, Appellant,**

v.

**Alvin Wayne PICKETT, Appellee.**

No. 97–225.

Supreme Court of Iowa.

Dec. 24, 1997.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, Steven Johnson, County Attorney, and John C. Heinicke and Mike Jacobsen, Assistant County Attorneys, for appellant.

Gerald B. Feuerhelm, Des Moines, for appellee.

Considered by HARRIS, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

This case involves an appeal by the State of the trial court's suppression of field sobriety tests conducted by a deputy sheriff on the defendant, Alvin Wayne Pickett. Pickett was arrested and charged by trial information with operating a motor vehicle while intoxicated, second offense, in violation of Iowa Code section 321J.2 (1995). He filed a pre-trial motion to suppress evidence gathered by the deputy sheriff. The trial court granted his motion. We granted the State's application for discretionary review. Iowa R.Crim. P. 11(2); Iowa R.App. P. 201. Upon our review of the record, we affirm in part, reverse in part, and remand.

I. *Background Facts and Proceedings.*

At approximately 1:50 a.m. the morning of September 3, 1996, Jasper County Deputy Sheriff Eric Nation, while on patrol, came upon the scene of an accident. Nation saw a white car in the ditch along the side of the road. He observed two women standing near Pickett, who was seated on a motorcycle. Nation stopped, exited his vehicle, and approached Pickett and the two women. Nation quickly ascertained that the car had been driven by one of the women. Pickett was not involved in the accident; he had stopped to see if he could assist the women.

While talking with Pickett and the women, Nation smelled a "strong odor of alcohol" coming from within the area of the three individuals. He did not observe any physical manifestations of intoxication. Nation asked all three people if any of them had been drinking. All replied in the negative. He then asked if he could take a look at their eyes. Pickett and the women acquiesced. Nation performed a brief horizontal gaze nystagmus test on the women and Pickett. The women passed but Pickett failed the test. Nation again asked Pickett if he had been drinking. Pickett admitted he "had drank a couple that evening." Nation asked all three people to provide a sample of their breath for a preliminary screening test. The result for the women was .00. Pickett's test indicated a blood alcohol level of over .10. Nation then conducted other field sobriety tests on Pickett. Pickett failed the one-leg stand, the nine-step walk and turn, and a second horizontal gaze nystagmus test. At some point Nation advised Pickett of his *Miranda* rights. After being informed of his rights, Pickett admitted he had driven the motorcycle to the location of the accident. Pickett was then arrested for operating a motorcycle while intoxicated.

Pickett was taken to the sheriff's office where he submitted to a breath test after the implied consent procedure was invoked. Nation misread Pickett's driving record and mistakenly advised Pickett as to the length of the applicable license suspension period.

Pickett filed a motion to suppress the results of the breath test taken after his arrest. The State filed a general resistance to Pickett's motion. Following a suppression hearing, the court ruled in Pickett's favor and suppressed the results of the breath test. In addition, the court suppressed all field sobriety tests obtained "as a result of the detention of the defendant."

In the application for discretionary review, the State does not challenge the court's suppression of the breath test. However, it does appeal the suppression of the field sobriety tests. The State contends Pickett's constitutional rights were not violated.

II. *Scope of Review.*

■ This case concerns the constitutional right to be free of unreasonable searches and seizures; our review of the district court's suppression ruling is de novo. *State v. Myer,* 441 N.W.2d 762, 763 (Iowa 1989).

III. *Constitutionality of the Questioning of Pickett.*

■ The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. The Due Process Clause of the Fourteenth Amendment makes the Fourth Amendment protections enforceable against the state. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1083 (1961); *State v. Thomas,* 540 N.W.2d 658, 662 (Iowa 1995).

■ "The Fourth Amendment's protection against unreasonable intrusions on a person's liberty arises when an officer seizes a person." *State v. Harlan,* 301 N.W.2d 717, 719 (Iowa 1981). A seizure occurs when an officer by means of physical force or show of authority in some way restrains the liberty of a citizen. *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889, 905 n. 16 (1968); *State v. Johnson,* 395 N.W.2d 661, 664 (Iowa App.1986). Not all communications between police officers and citizens involve a seizure. *Harlan,* 301 N.W.2d at 719.

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.

*Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983) (citations omitted).

■ The Fourth Amendment does not protect against all searches and seizures, its protection extends only to those that are unreasonable. "A search and seizure without a valid warrant is per se unreasonable unless it comes within a recognized exception such as consent, search incident to arrest, probable cause and exigent circumstances, or plain view." *State v. Manna,* 534 N.W.2d 642, 644 (Iowa 1995).

■ To determine whether a citizen's liberty has been restrained "by physical force or show of authority," the facts of the case must be examined. In this case Officer Nation did not stop Pickett. Rather, Nation came upon what was obviously the scene of an accident and approached three individuals who were nearby. He did not in any way detain any of the individuals. He merely began asking them questions. Pickett and the women were free to refuse to listen to or answer Nation's questions. At no point during the initial questioning of the three people, did Nation restrain their liberty "by physical

force or show of authority." Pickett voluntarily answered the questions Nation asked.

## IV. *Suppression of the Field Sobriety Tests.*

The trial court based its suppression of the results of the field sobriety tests on our holding in *Munson v. Iowa Department of Transportation,* 513 N.W.2d 722 (Iowa 1994). *Munson* involved an appeal from the revocation of a driver's license. *Munson,* 513 N.W.2d at 723. In *Munson,* a police officer came upon a pickup parked in a private parking lot. *Id.* Munson was asleep behind the wheel of the pickup and the engine was off. *Id.* at 724. The officer woke Munson by knocking on the window of the vehicle. *Id.* at 723. When Munson handed his driver's license to the officer the officer smelled alcohol and asked Munson to perform sobriety tests. *Id.* at 724. Munson failed the tests and was arrested for operating a vehicle while intoxicated. *Id.*

We found there was substantial evidence in the record that Munson was intoxicated when he was arrested. *Id.* However, we also found there was no evidence the police officer possessed reasonable grounds to believe Munson was "operating a vehicle while intoxicated." *Id.* at 725. Having failed to demonstrate reasonable grounds for invocation of the implied consent procedure, the revocation of Munson's license was improper. *Id.*

*Munson* is not applicable in this case. The issue in *Munson* was whether Munson was operating the vehicle while intoxicated. Here, the issue is whether the questioning of Pickett and the administration of the field sobriety tests constituted an unreasonable seizure in violation of his constitutional rights. Upon our de novo review, we find Pickett's constitutional rights were not violated. There was no seizure of Pickett prior to his arrest. The field sobriety tests were conducted with his consent.

Because the State does not appeal the suppression of the breath test results, we affirm their suppression. We reverse the suppression of the field sobriety tests.[1] We remand for further proceedings upon the pending criminal charge.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

1. We note the admissibility of the preliminary screening test is controlled by Iowa Code section 321J.5. Under that section, the results of the preliminary screening tests are not admissible.