**STATE of Iowa, Appellee,**

v.

**Todd H. REINDERS, Appellant.**

**No. 02–1932.**

Supreme Court of Iowa.

Dec. 17, 2004.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, John P. Sarcone, County Attorney, and Charles Kenville, Assistant County Attorney, for appellee.

TERNUS, Justice.

In his criminal prosecution for possession of a controlled substance, the defendant, Todd Reinders, sought to suppress evidence discovered by the police when officers questioned him and searched him after observing him walking along a city street in the middle of the night. The district court overruled his motion to suppress, and he was subsequently convicted of the drug charge. His conviction was affirmed by the court of appeals and this court granted further review. Upon our review of the record and consideration of the parties' arguments, we affirm.

## I. Background Facts and Proceedings.

On July 23, 2002, at approximately 2:30 a.m., two Urbandale police officers were traveling in the 7400 block of Hickman Road in Urbandale, Iowa when they noticed the defendant walking westward. No businesses were open at this hour, and the defendant was not dressed in typical workout attire. Based upon these facts and the officers' knowledge there had been numerous car burglaries in the area, the officers decided to approach the defendant and talk to him.

The patrolmen, Officer Meskimen and Officer Dobbins, stopped their vehicle several feet behind the defendant and approached the defendant on foot as he walked through a K–Mart parking lot. The officers questioned the defendant about what he was doing and explained they were asking because there had been recent burglaries in the area. Reinders told the officers that he was walking home from a friend's house. The officers then asked for identification, but the defendant had none. In response to the officers' request, the defendant supplied them with a false name, birth date, and social security number. Officer Dobbins then went to the patrol car to check on whether there were any outstanding arrest warrants for the name given by Reinders.

About this time a third patrolman, Officer Pettit, arrived. He had just finished a traffic stop and came to the scene when he noticed the other officers were talking to the defendant. Pettit joined Meskimen as Meskimen was questioning the defendant.

According to Officer Meskimen, he—Meskimen—asked the defendant if the defendant had any weapons on him, and Reinders replied that he had a kitchen knife in his pocket. Meskimen then asked whether he could search the defendant's pockets, and the defendant said he could. At this point Reinders started to pull the knife out of his pocket, but Meskimen told the defendant he—Meskimen—would retrieve the knife. Meskimen then took the knife out of the defendant's pocket. Meskimen testified that since Reinders had consented to a search of his pockets, Meskimen reached in a second time and pulled out some foil that contained a pow-

dery substance later identified as methamphetamine.

Officer Pettit had a slightly different recollection. He agreed that Officer Meskimen had asked the defendant whether the defendant had any weapons, and the defendant had responded that he had a kitchen knife in his pocket. When Reinders proceeded to pull the knife out of his pocket, Meskimen told Reinders that he—Meskimen—would retrieve the knife. After obtaining Reinders' permission to do so, Meskimen reached into the defendant's pocket and pulled out the knife. According to Officer Pettit, Meskimen asked the defendant if he had anything else they should be concerned about, and the defendant said no. Meskimen then asked Reinders if Meskimen could search the defendant, and Reinders responded, "go ahead and search," or something to that effect, simultaneously raising his arms. Meskimen then discovered the foil packet in Reinders' pocket.

Officer Dobbins filed a written report of the incident, and his report coincides more closely with the testimony of Officer Meskimen. Dobbins stated in his report:

> Officer Meskimen then asked the suspect if he had any weapons on him. Suspect stated that he did have a kitchen knife on him in his pocket. Officer Meskimen then asked the suspect if he could have permission [to] search his pockets, the subject stated "yes." Officer Meskimen then retrieved the knife and a piece of foil containing a pink powdery substance to wit: Methamphetamine.

Reinders was arrested and charged with possession of a controlled substance in violation of Iowa Code section 124.401(5) (2001). He filed a motion to suppress the drugs found in his pocket, asserting the stop and search violated his constitutional right to be free of unreasonable searches and seizures. The defendant argued in his motion that a reasonable person in his position would not have felt free to leave when asked for identification. He also contended in his motion that he had not given consent to a search of his pocket.

The court overruled the defendant's motion to suppress, concluding the officers were justified in stopping the defendant because there was "cause to reasonably believe there might have been criminal activity involved [based on] the time of night, location of the defendant, [and] recent criminal activity." The court found the later search of Reinders' pocket was consensual.

The case was subsequently submitted to the court for a trial on the minutes of testimony. The court found the defendant guilty as charged, gave him a suspended sentence, and placed him on probation for one year. Reinders filed this appeal, which we transferred to the court of appeals. That court concluded the defendant was not seized during his questioning by the officers, and the search of his pocket did not violate Reinders' constitutional rights because he had consented to the search. We granted Reinders' application for further review.

II. *General Principles of Law.*

██ "The Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution protect persons from unreasonable searches and seizures." *State v. Cline,* 617 N.W.2d 277, 281 (Iowa 2000), *overruled on other grounds by State v. Turner,* 630 N.W.2d 601, 606 n. 2 (Iowa 2001). Evidence obtained in violation of these provisions is inadmissible "no matter how relevant or probative the evidence may be." *State v. Predka,* 555 N.W.2d 202, 205 (Iowa 1996). Because the federal and state search-and-seizure clauses are nearly identical, the

construction of the federal constitution is persuasive in our interpretation of the state provision. *See State v. Olsen,* 293 N.W.2d 216, 219 (Iowa 1980) (citing *Bierkamp v. Rogers,* 293 N.W.2d 577, 579 (Iowa 1980)). Decisions of the United States Supreme Court interpreting the Fourth Amendment are not, however, binding on this court with respect to the Iowa Constitution. *Id.* Because we have found no basis to distinguish the protections afforded by the Iowa Constitution from those afforded by the federal constitution under the facts of this case, our discussion of the merits of the defendant's suppression motion applies equally to the state and federal grounds. *See State v. Lewis,* 675 N.W.2d 516, 522 (Iowa 2004).

▆▆▆ This court's review of a district court's ruling on a claim that the State has violated a defendant's constitutional right to be free of unreasonable searches and seizures is de novo. *State v. Maddox,* 670 N.W.2d 168, 171 (Iowa 2003). In assessing alleged violations of constitutional rights, we independently evaluate the totality of the circumstances shown in the record. *Cline,* 617 N.W.2d at 280. We give deference to the district court's findings of fact "due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *Turner,* 630 N.W.2d at 606. The State must prove by a preponderance of the evidence that a search or seizure was lawful. *State v. Bumpus,* 459 N.W.2d 619, 622 (Iowa 1990).

III. *Legality of Stop.*

▆▆▆ " 'The Fourth Amendment's protection against unreasonable intrusions on a person's liberty arises when an officer seizes a person.' " *State v. Pickett,* 573 N.W.2d 245, 247 (Iowa 1997) (citation omitted). "A seizure occurs when an officer by means of physical force or show of authority in some way restrains the liberty of a

citizen." *Id.* Police questioning by itself, however, is generally not a seizure. *See Hiibel v. Sixth Judicial Dist. Ct.,* 542 U.S. ——, ——, 124 S.Ct. 2451, 2458, 159 L.Ed.2d 292, 302 (2004); *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247, 255 (1984). The United States Supreme Court has held:

> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means.

*United States v. Drayton,* 536 U.S. 194, 200–01, 122 S.Ct. 2105, 2110, 153 L.Ed.2d 242, 251 (2002). An individual's response in such situations is considered consensual, even though the person has not been advised that he is free to refuse to respond. *Id.* at 203, 122 S.Ct. at 2112, 153 L.Ed.2d at 253; *Delgado,* 466 U.S. at 216, 104 S.Ct. at 1762, 80 L.Ed.2d at 255. "Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment." *Delgado,* 466 U.S. at 216, 104 S.Ct. at 1763, 80 L.Ed.2d at 255. Clearly, though, when a citizen exercises his right to refuse to answer questions and the authorities take additional steps to elicit the requested information, a seizure or detention has occurred. *Id.* at 216–17, 104 S.Ct. at 1763, 80 L.Ed.2d at 255.

Turning to the present case, we note the defendant concedes no seizure occurred when the officers first approached him.

He claims, however, that he was, in effect, detained when they asked him for identification because under the totality of the circumstances "no reasonable individual would have felt free to simply walk away and refuse to answer the officer's questions." We conclude the defendant's position is not supported by the principles set forth above or by our own case law.

This court recently held under circumstances similar to those present here that no seizure occurs when an officer merely asks for identification. *See State v. Smith,* 683 N.W.2d 542, 543 (Iowa 2004). In *Smith,* a deputy sheriff stopped a vehicle after the driver failed to stop at a stop sign. *Id.* After issuing the driver a citation, the deputy approached Smith, who was seated in the front passenger seat, and asked for identification. *Id.* Smith gave the deputy a non-operator identification card issued by the Iowa Department of Transportation, and the deputy then returned to his vehicle to relay Smith's identification information to his dispatcher. *Id.* Upon being informed there was an outstanding arrest warrant for Smith, the deputy placed him in custody. *Id.* While searching Smith incident to arrest, the deputy discovered a packet of methamphetamine. *Id.*

In his later criminal prosecution for possession of a controlled substance, Smith was successful in suppressing the methamphetamine based on a claim that the deputy unconstitutionally detained him after completing the traffic stop. *Id.* at 544. We reversed on appeal, holding the deputy had not "violated the Fourth Amendment when he asked Smith for identification and checked for outstanding warrants." *Id.*

We find no basis to distinguish the case before us from *Smith.* As in *Smith,* there was no show of authority, no intimidation, and no use of physical force by the officers in their encounter with Reinders. The officers simply engaged him in conversation and asked for identification. The defendant willingly answered the officers' questions and provided identifying information. Under the circumstances of this case, the officers' conduct did not constitute a restraint on Reinders' freedom to walk away. Therefore, we conclude the defendant was not seized prior to the search of his pocket. We turn, then, to a discussion of whether the officer's search of Reinders was constitutional.

IV. *Legality of Search.*

▪▪▪ A warrantless search · violates the Fourth Amendment "unless it falls within a recognized exception." Exceptions include: "(1) consent to search; (2) the presence of probable cause and exigent circumstances; (3) objects in plain view; or (4) search conducted incident to a lawful arrest."

*State v. McConnelee,* 690 N.W.2d 27, 30 (Iowa 2004) (citations omitted). The only exception implicated by the facts of the case before us is consent.

Consent may be express or implied. It may take a verbal form, or be found in gestures or other non-verbal conduct. In addition, consent to a search may be limited or qualified. Law enforcement authorities conducting the search are constrained by such limitations or qualifications. The scope of consent is determined by what a "typical reasonable person [would] have understood by the exchange between the officer and the suspect."

*Id.* (citations omitted). The validity of consent does not depend on a particular defendant's knowledge that he had a right to refuse permission for the search. *Drayton,* 536 U.S. at 207, 122 S.Ct. at 2114, 153 L.Ed.2d at 255; *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347, 355 (1996).

The defendant contends he did not consent to a search of his person. He argues Officer Meskimen told the defendant that Meskimen would remove the knife, and the defendant then raised his arms to facilitate the officer's retrieval of the knife. But the testimony of all three officers was to the contrary. Although their recollections varied as to whether Officer Meskimen asked the defendant if he could search the defendant before or after removing the knife from Reinders' pocket, they all testified Meskimen asked for permission to search the defendant and the defendant gave the requested permission. The district court found this testimony to be credible and we defer to that court's assessment. Therefore, we, like the district court, conclude the defendant consented to the search of his pocket. Consequently, his Fourth Amendment rights were not violated by the warrantless search.

### V. *Conclusion.*

The defendant was not seized when the officers asked for identification and checked for outstanding warrants. The subsequent search of the defendant was conducted after he gave his consent. Therefore, the trial court did not err in denying the defendant's motion to suppress. Accordingly, we agree with the court of appeals that the defendant's conviction must be affirmed.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except LARSON, J., who takes no part.