**IN THE COURT OF APPEALS OF IOWA**

No. 14-2104
Filed June 15, 2016

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**PATRICK DANIEL WHITE,**
 Defendant-Appellant.

_____

 Appeal from the Iowa District Court for Johnson County, Marsha A. Bergan, Judge.

 Patrick White appeals his conviction for operating while intoxicated. **AFFIRMED.**

 Davis L. Foster of Foster Law Office, P.C., Iowa City, for appellant.

 Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

 Considered by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Patrick White appeals his conviction for operating while intoxicated (OWI), claiming the district court erred in denying his motion to suppress evidence obtained by law enforcement. We affirm.

In the late evening hours of October 7, 2013, Jack Swails called 911 and reported that another motorist, Patrick White, had backed into his vehicle while they were stopped at a red light. Swails reported the vehicle's make (Toyota), model, and license plate number to the 911 operator. Officer Alex Stricker was dispatched to find the offending vehicle. Officer Stricker located the Toyota parked in an open garage and, as he approached the parked vehicle, he observed White close the driver's side door. White then walked to the porch of the adjacent residence and stood on the porch when Officer Stricker initiated contact. Upon Officer Stricker's request, White stepped down from the porch and onto the driveway. After some questioning, White admitted he drank two beers and a shot that evening. Officer Stricker performed field sobriety tests on White and, due to the results of those tests, placed White under arrest for OWI.

On October 21, 2013, White was charged with OWI, third offense, in violation of Iowa Code section 321J.2 (2013). On January 17, 2014, White filed a motion to suppress claiming the police officer's actions constituted an unreasonable seizure and violated White's rights under both the Iowa and United States Constitutions. Specifically, he claimed since he was standing on the front porch of the residence at the time of the contact with the officer, he was in his home and the officer unlawfully seized him without a warrant. He also claimed if the court viewed the incident as a stop of White while he was not in his home, the

police did not have sufficient cause to pull his vehicle over since they were only investigating a completed misdemeanor.

After a hearing, the district court issued an order denying White's motion to suppress. White now appeals.

White claims the district court should have granted his motion to suppress under both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. Therefore, our review is de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). This review requires "an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001) (citation omitted). The court gives "deference to the factual findings of the district court due to its opportunity to evaluate the credibility of the witnesses, but [is] not bound by such findings." *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007).

We generally agree with the district court's opinion; however, we do not view the police interaction with White as a stop and investigation. *See Pals*, 805 N.W.2d at 774 (describing a *Terry* stop). The issue on appeal is properly viewed as whether an unlawful seizure occurred when Officer Stricker initiated contact with White in the course of investigating White's violations earlier in the evening. *See State v. Wilkes*, 756 N.W.2d 838, 842–43 (Iowa 2008) (finding seizure occurred after the officer developed reasonable suspicion the defendant had been driving while intoxicated after questioning the defendant who was found in a parked car with a running engine).

Whether a "seizure" occurred is determined by the totality of the circumstances. *United States v. Drayton*, 536 U.S. 194, 207 (2002). "Factors

that might suggest a seizure include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Wilkes*, 756 N.W.2d at 842–43 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). In contrast, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Mendenhall*, 446 U.S. at 555.

Upon our de novo review and considering the "totality of the circumstances," we find an unlawful seizure did not occur, and Officer Stricker developed reasonable suspicion to believe White had been driving while intoxicated based on his interactions with White prior to the seizure. *See Wilkes*, 756 N.W.2d at 844. Up to the point where Officer Stricker observed White exhibiting signs of intoxication, the interaction between Officer Stricker and White was consensual and not a "seizure." The district court summarized this interaction in the following fashion:

> Then, while standing on the driveway/sidewalk area, Officer Stricker asks Mr. White, who is still on the porch: "Can you step down here and talk with me?" The Court hears no response from Mr. White. Officer Stricker then steps up one porch step and says to Mr. White: "I need you to step down and talk with me." Mr. White then steps down to the driveway with Officer Stricker. Officer Stricker shines his flashlight from the last porch step to the driveway to light the path for Mr. White. At the hearing, Officer Stricker essentially testifies that he intended to direct Mr. White to come off the porch. Mr. White essentially testifies that he viewed Officer Stricker's statement to be a directive to come down off the porch. The Court, however, notes that Officer Stricker did not act to compel Mr. White to step down to the driveway. Officer Stricker was the only officer at the scene at that time. He had not drawn his weapon. He did not shine a flashlight in Mr. White's face. He did not touch Mr. White. He did not speak in a loud or demanding tone. He made no threats. Mr. White was close to the door of his house.

He is a larger man than Officer Stricker. He was at his home. Mr. White could have turned around and entered the house and locked the door. The Court finds that, instead, Mr. White chose to step down to the driveway as requested just as he had earlier chosen not to enter his home when the squad car pulled into the driveway.

Additionally, we agree with the district court's analysis of *Florida v. Jardines*, 133 S. Ct. 1409 (2013), and find Officer Stricker did not violate White's privacy by entering the porch area of White's residence. The court reasoned:

> In *Jardines* Justice Scalia makes it clear that a porch is an area "where 'privacy expectations are most heightened.'" *Jardines*, 133 S.Ct. at 1415 (citing *California v. Ciraolo*, 476 U.S. 207, 213 (1986)). Thus, the search warrant in *Jardines* could not be upheld, because it was based on information obtained as a result of the police bringing dogs to a citizen's porch to conduct a sniff for drugs. *Jardines*, 133 S. Ct. at 1415–17. The *Jardines* search (by officers directing the dog sniff) was conducted on the porch without the porch-owner's consent. As Justice Scalia wrote in *Jardines*: "Here their behavior objectively reveals a purpose to conduct a search, which is not what anyone would think he had license to do." *Id.* at 1417. The officers' action with their canines in *Jardines* is distinguishable from what Justice Scalia noted has previously been accepted as a limited license of officers to come onto a porch. "Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Id.* at 1416 (citing *Kentucky v. King*, 563 U.S. 452, 469, (2011)). "[T]he occupant has no obligation to open the door or to speak." *King*, 563 U.S. at 469–70.
>
> So it is with Officer Stricker and Mr. White. Officer Stricker had a limited license to take a step on to the porch to ask Mr. White to speak with him. Mr. White had no obligation to step down to the driveway and speak with the officer. He could have turned around, entered his home, and closed the door. The Court concludes that a reasonable person would not have felt compelled to yield to Officer Stricker's request and statement to step off the porch to the driveway to speak with the officer.

We affirm the district court's denial of White's motion to suppress.

**AFFIRMED.**

McDonald, J., concurs; Tabor, P.J., dissents.

**TABOR, Presiding Judge.** (dissenting)

I respectfully dissent. I believe the district court should have granted Patrick White's motion to suppress evidence of his intoxication because the police officer violated White's rights under the Fourth Amendment of the Federal Constitution and article I, section 8 of the state constitution by seizing him outside of his home based on nothing more than reasonable suspicion of a completed simple-misdemeanor driving offense.[1]

At about 10:30 p.m. on October 7, 2013, White parked his Toyota in his garage and walked toward the front steps of his residence. Just before White opened the door to his house, Officer Stricker turned into White's driveway and parked his patrol car "right over the sidewalk." The uniformed officer turned on his overheard emergency lights, referred to as "cherries" in the suppression hearing. The officer left his patrol car and approached White, who had ascended the three steps of his front porch. The officer first inquired: "What's going on tonight man?" The officer also asked White where he was coming from and if he was carrying identification.

Officer Stricker—who was standing in the driveway—then said: "Can you step down here and talk with me?" As Stricker made the request, he took a single step up toward White. When White did not respond, the officer said: "I need you to step down and talk with me." The officer acknowledged at the

---

[1] On appeal, the State argues the officer's initial interaction with White was not a seizure but does not argue the district court was correct in holding "a per se prohibition against a *Terry* stop when an officer has reasonable suspicion of a completed misdemeanor would be a dangerously rigid application of law." Because the State does not pursue this question left open in *State v. Pals*, 805 N.W.2d 767, 774 (Iowa 2011), I do not believe it is a viable basis for upholding the district court's denial of the motion to suppress.

suppression hearing that the second statement was a directive to White. White complied as the officer shined his flashlight from the last porch step toward the driveway to light a path for White. The dash-cam video shows the officer continued to shine his flashlight toward White during their encounter.

The district court opined that when faced with this situation, White "could have turned around and entered the house and locked the door" but instead "chose to step down to the driveway as requested." Although seeming to find no seizure, the district court nevertheless determined the officer was engaged in a *Terry* stop to investigate the simple-misdemeanor hit-and-run reported by another motorist. Taking a different route than the district court, the majority declines to view the officer's interaction with White as a "stop and investigation." Instead, the majority finds the encounter was consensual and not a seizure. I disagree.

When an officer, by means of physical force or a show of authority, restrains the liberty of a citizen, a seizure occurs. *Terry v. Ohio,* 392 U.S. 1, 20 (1968). As the majority correctly notes, we look at the totality of circumstances to decide whether an officer's interaction with a citizen amounts to a Fourth Amendment seizure.

Here, the evidence established the officer exercised his authority to request White to stop, rendering the encounter a seizure. *See State v. Williams*, No. 14-1495, 2015 WL 7567544, at *2 (Iowa Ct. App. Nov. 25, 2015) (reversing denial of motion to suppress when officer briefly sounded his siren to catch suspect's attention). Several factors lead me to this conclusion. First, the officer activated his emergency lights when he parked in White's driveway. *See State v.*

*Wilkes*, 756 N.W.2d 838, 844 (Iowa 2008) (explaining use of ordinary headlights at night is "not coercive in the same manner as the activation of emergency lights which invoke police authority and imply a police command to stop and remain").

Second, the officer blocked White's driveway with his patrol car. While White could conceivably have entered his house, he could not have left in his Toyota. *See id.* (noting restriction of egress is a factor in analyzing consensual nature of encounter with police).

Third, the officer by his own admission ordered White to step off the porch and speak to him. Police questioning alone generally does not mean the citizen is seized. *See State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004). But "if the person refuses to answer and the police take additional steps . . . to obtain an answer, then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure." *I.N.S. v. Delgado*, 466 U.S. 210, 216-17 (1984).

Here, the officer took the extra measure of directing White to move to a specific space and mandating he talk with the officer, while shinning his flashlight on White and using the light to direct White toward him. *See Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) (noting the officer's "act of shining his patrol car's overhead lights in the appellant's direction, coupled with his request-that-sounded-like-an-order, to 'come over here and talk to me,' caused the appellant to yield to Griffin's show of authority—a reasonable person in the appellant's shoes would not have felt free to leave or decline the officer's requests"). A reasonable person who received Officer Stricker's directive—while bathed in the flashing red lights of his patrol car—would not have felt free to turn

heel and go into his residence.  *See United States v. Mendenhall,* 446 U.S. 544, 554 (1980) (explaining person has been "seized" for Fourth Amendment purposes if, in view of all circumstances surrounding the incident, "a reasonable person would have believed that he was not free to leave").

I believe the district court should have suppressed all evidence obtained as a result of the officer's illegal seizure of White.  I would reverse and remand for a new trial excluding that evidence.