**IN THE COURT OF APPEALS OF IOWA**

No. 15-0978
Filed November 9, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ANDRE ROCKINGHAM,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Marshall County, Kim M. Riley, District Associate Judge.


        Defendant appeals his convictions for attempted burglary and burglary from a motor vehicle. **AFFIRMED.**


        Melissa A. Nine of Nine Law Office, Marshalltown, for appellant.

        Thomas J. Miller, Attorney General, and Kristin A. Guddall, Assistant Attorney General, for appellee.


        Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

The defendant, J.B. Andre Rockingham, was convicted of three counts of third-degree burglary of an unoccupied motor vehicle, in violation of Iowa Code section 713.6A(2) (2015), and attempted burglary in the third degree, in violation of Iowa Code section 713.6B. On appeal, Rockingham contends the district court erred in denying his motion to suppress evidence allegedly obtained as a result of unlawful search and seizure. Rockingham also contends there was insufficient evidence to support his convictions.

I.

The offense conduct at issue occurred on the night of January 31, 2015 in Marshalltown. At approximately 6:25 p.m., Marshalltown Police Officer Eric Siemens was dispatched to respond to a burglary of a motor vehicle. The victim reported the following missing items: her pink computer tablet; her cellular phone; and her wallet containing cash, bank cards, gift cards, and her driver's license. At approximately 10:25 p.m. the same evening, Officer Stephanie Deutmeyer was dispatched to respond to another burglary of a motor vehicle. The victim reported a wallet was missing from her car.

Officers Anthony Accola and Dane Bowermaster responded to the second call to provide assistance to Deutmeyer. Deutmeyer had observed footprints in the snow near the second victim's vehicle leading to two other vehicles. Accola testified the footprints were left by an adult male. Accola tracked the footprints in the snow through the neighborhood. While following the footprints, Accola observed a discarded box for sixteen-ounce cans of Bud Light beer on the ground. Snow had just started to accumulate on the box, from which Accola

inferred the box had been discarded fairly recently. The footprints continued on, leading to several other cars in the neighborhood. Accola testified the footprints approached the driver's side door of each vehicle, from which he inferred the suspect was attempting to gain access to the interior of the vehicles. As Accola continued following the footprints, he observed the footprints were leaving a tread pattern, which suggested the footprints were fresh given the ongoing snowfall and the officers were gaining on the suspect. The footprints led the officers to the driver's side door of another vehicle and then to a residence on Bromley Street. At the residence, the footprints approached a sliding door of an enclosed back porch. Accola checked the sliding door, which opened, and he observed wetness on the floor. Accola checked the interior door of the residence, and it was locked. Accola and Bowermaster continued to follow the treaded footprints from the residence to a nearby convenience store. At that point, the foot traffic was too great for them to continue tracking the footprints.

Bowermaster and Accola were beginning to retrace their steps to record license plate numbers and addresses when they noticed an individual wearing a backpack walk across the street near the convenience store. This occurred approximately twenty minutes after the officers lost the footprint trail. The officers believed a backpack could be used to store stolen items. The officers observed the individual enter the convenience store. When they approached the store, they observed the individual appearing to use an ATM with an object in his hand. Bowermaster recognized the individual as Rockingham because Bowermaster was working another car burglary in which Rockingham was a suspect.

Bowermaster said something to the effect of, "That's our guy," or "He's good for the burglaries." Accola and Bowermaster then entered the convenience store.

The officers and Rockingham dispute what happened after the officers entered the store. The officers' recollection is as follows. Accola entered the convenience store followed by Bowermaster. Accola said, "Hey, J.B., what's going on? What are you doing?" Accola saw Rockingham put whatever object was in his hand into his coat pocket. Accola stood a few feet from Rockingham, and Bowermaster stood behind Accola. Accola asked Rockingham what was in his bag. Rockingham bent down, grabbed the bag, and opened it for Accola to observe. Inside the bag were sixteen-ounce Bud Light beer cans. Rockingham began pulling them out. Accola observed car chargers inside the bag. Accola asked Rockingham where the beer box was. Rockingham responded he left the box a block away, motioning in the exact direction of the discarded box the officers had observed. At that point, Accola felt he had probable cause to arrest Rockingham, and he did so. The officers found the first victim's pink tablet, money clip, cell phone, bank cards, and gift cards in the backpack. The second victim's bank cards were found in Rockingham's pocket. Officers also recovered property belonging to a third victim of a car burglary.

Rockingham's recollection is different. He was charging his phone in an outlet behind the ATM. He testified four or five police officers approached him in the store in an aggressive manner. One officer grabbed his arm. They began questioning him about the contents in the backpack. He did not offer to let the officers see inside his backpack; however, a beer fell out of his backpack as he was trying to push it out of the way with his foot. At that point, a female officer

grabbed his bag, and Accola arrested him. Upon arresting Rockingham, the officers searched his bag.

## II.

Rockingham contends the district court erred in denying his motion to suppress evidence obtained as a result of an allegedly unlawful search and seizure in violation of his rights under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. Specifically, Rockingham argues the officers detained or arrested him without sufficient legal justification. Because his argument raises constitutional questions, our review is de novo. *See State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). This requires "an independent evaluation of the totality of the circumstances as shown by the entire record." *Id.*

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The "textual 'touchstone of the Fourth Amendment is reasonableness.'" *State v. Lewis*, 675 N.W.2d 516, 529 (Iowa 2004) (citation omitted). The Fourth Amendment is applicable to state actors by incorporation via the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 660 (1961). The text of article I, section 8 of the Iowa Constitution is materially indistinguishable from the federal constitutional provision. "[W]hile United States Supreme Court cases are entitled to respectful consideration, we will engage in independent analysis of the content of our state search and seizure provisions." *State v. Ochoa*, 792 N.W.2d 260, 267 (Iowa 2010). It is the responsibility of Iowa

courts to say what the Iowa Constitution means. *See State v. Cline*, 617 N.W.2d 277, 285 (Iowa 2000), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001). Where, as here, "a party raises issues under the Iowa Constitution and the Federal Constitution, but does not suggest a different standard be applied under the Iowa Constitution, we generally apply the federal standard." *State v. Edouard*, 854 N.W.2d 421, 452 (Iowa 2014) (Appel, J., concurring specially), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016).

We first address the legality of the officers' initial interaction with Rockingham. The Fourth Amendment is implicated when an officer seizes a person. *See State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004). However, not all police-citizen encounters constitute seizures. As the Supreme Court has explained:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.

*Florida v. Royer*, 460 U.S. 491, 497–98 (1983) (citations omitted). As noted above, the parties dispute the facts and circumstances surrounding the initial encounter. The officers testified they approached Rockingham and asked what

he was doing and what he had in his backpack. Rockingham contends the police rushed him and grabbed his arm. Like the district court, we choose to credit the officers' testimony. *See State v. Lane*, 726 N.W.2d 371, 379 (Iowa 2007) (explaining the deference afforded to the district court even on de novo review). The officers' initial encounter with and inquiries of Rockingham did not constitute a seizure within the meaning of the Fourth Amendment.

Having concluded the officers' testimony regarding the encounter was more credible, we next address the search of Rockingham's backpack. The officers testified Rockingham voluntarily opened the backpack in response to their inquiry. Rockingham contends this was a non-consensual search. In support of his argument, Rockingham cites the officers' uniforms, badges, weapons, position relative to him in the store, and Bowermaster's statement to Accola that "this is probably our guy" as evidence of coercion rendering the entire encounter non-consensual. The mere fact the officer was in uniform and identified himself as an officer does not convert a consensual encounter into a non-consensual one. *See State v. Pickett*, 573 N.W.2d 245, 247 (Iowa 1997). The officers' credible testimony does not suggest any application of force, intimidating movement, brandishing of weapons, blocking of exits, threat, command, or authoritative tone of voice. *See United States v. Drayton*, 536 U.S. 194, 204 (2002). Given the totality of the circumstances, we find the encounter between Rockingham and the officers to be a consensual one. More specifically, we conclude Rockingham voluntarily revealed the contents of his backpack to the officers upon inquiry.

We next address the legality of the officers' arrest of Rockingham and further search of his backpack and person. An arrest must be supported by probable cause. "Probable cause exists when the facts and circumstances within the arresting officer's knowledge would warrant a person of reasonable caution to believe that an offense has been committed." *State v. Bradford*, 620 N.W.2d 503, 508 (Iowa 2000). When an officer has probable cause to arrest, the officer may conduct a search incident to arrest. *See State v. Christopher*, 757 N.W.2d 247, 249 (Iowa 2008). Here, the officers were aware of multiple car thefts in the same vicinity. The officers tracked fresh footprints in newly fallen snow to multiple cars and a residence in the neighborhood. Accola believed the footprints were left by an adult male due to the size of the footprints. He also believed the suspect was attempting to gain entry into the vehicles because the footprints approached the driver's side doors of the cars. Along the trail of footprints, the officers observed a recently discarded box of beer matching the beer observed in Rockingham's backpack. Rockingham told the officers he discarded the box one block away from the convenience store, motioning in the exact direction of the location where the officers had observed the box. The officers thus had reason to believe the footprints were left by Rockingham. Finally, one of the officers had prior knowledge of Rockingham and knew he was a suspect in other car burglaries. These facts are sufficient to establish probable cause to arrest Rockingham and conduct a search of his person and backpack incident to the arrest.

For the reasons stated above, we conclude the district court did not err in denying Rockingham's motion to suppress evidence. The officers did not violate

Rockingham's Fourth Amendment rights in approaching him and asking him several questions. The officers lawfully observed the beer cans in Rockingham's backpack when Rockingham voluntarily opened the backpack in response to the officers' inquiries. Based on the totality of the circumstances, the officers then had probable cause to arrest Rockingham and conduct a search incident to his arrest.

III.

Rockingham contends his convictions are not supported by sufficient evidence. We review sufficiency-of-the-evidence claims for the correction of legal error. *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). We uphold a verdict where there is substantial evidence in the record to support the jury's verdict. *Id.* "Substantial evidence" is evidence that could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005). We review the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. *See State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003).

"The court considers all the evidence, not just that supporting the verdict." *State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999). However, it is the jury's responsibility to judge the credibility of the witnesses and weigh the evidence. *See State v. Frake*, 450 N.W.2d 817, 819 (Iowa 1990). Even if there is substantial evidence to support a contrary result, substantial evidence to support a verdict can still be present. *See State v. Helm*, 504 N.W.2d 142, 146 (Iowa Ct. App. 1993). "Direct and circumstantial evidence are equally probative. Whether the evidence is direct or circumstantial, however, it must raise a fair inference of

guilt; it must do more than create speculation, suspicion, or conjecture." *State v. Schrier*, 300 N.W.2d 305, 308 (Iowa 1981) (citations omitted).

A.

We first discuss Rockingham's convictions for burglary of a motor vehicle. There is substantial evidence in the record to support Rockingham's convictions for these crimes. The officers trailed footprints from the victim's vehicle to the driver's side doors of several other vehicles in the neighborhood, supporting an inference that the suspect was trying to gain access to the interior of the vehicles. The evidence showed the suspect leaving the footprints discarded a beer box while walking through the neighborhood. Rockingham was located near the vicinity of the footprints close in time to the burglary in possession of the beer cans matching the brand and size of the beer cans from the box. He admitted discarding the box near the location officers observed the box. From this the jury could have inferred Rockingham was the person who left the footprints in the snow. Most important, Rockingham was in possession of personal items reported missing from the three burglarized vehicles. *See State v. Traywick*, No. 02-1684, 2003 WL 21543780, at *1 (Iowa Ct. App. July 10, 2003) (possession of stolen credit card two to three miles from burglarized home supported conviction); *State v. Hall*, 371 N.W.2d 187, 190 (Iowa Ct. App. 1985) (circumstances surrounding possession of recently stolen property gave rise to inference of participation in burglary). We conclude these convictions are supported by substantial evidence in the record.

B.

We turn next to the charge of attempted burglary. The offense conduct for this charge related to the residence mentioned above. The jury was instructed as follows:

> The State must prove all of the following elements of Attempted Burglary in the Third Degree:
> 1. On or about the 31st day of January, 2015, the defendant attempted to break or enter the residence at 307 Bromley Street, Marshalltown, Iowa.
> 2. The residence at 307 Bromley Street, Marshalltown, Iowa was an occupied structure.
> 3. The defendant did not have permission or authority to attempt to break or enter the residence at 307 Bromley Street, Marshalltown, Iowa.
> 4. The residence was not open to the public at the time.
> 5. The defendant did so with the specific intent to commit a theft.

Where, as here, an instruction is given without objection, it is the law of the case for purposes of our review of the sufficiency of the evidence. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).

When the evidence is viewed in the light most favorable to the verdict, there is substantial evidence the defendant entered the residence. The police tracked footprints throughout the neighborhood and subsequently obtained information showing the footprints were left by Rockingham. Specifically, Rockingham's possession of the beer connected him to the box found along the trail of footprints. The officers observed the footprints lead to and from the sliding door of the back porch of the house. *See State v. Sires*, No. 14-1894, 2015 WL 5965228, at *1 (Iowa Ct. App. Oct. 14, 2015); *State v. Phillips*, No. 13-1402, 2014 WL 5243363, at *2 (Iowa Ct. App. Oct. 15, 2014). The officers entered the completely enclosed back porch and observed wet footprints. From this the jury

could have inferred Rockingham entered into the enclosed porch. *See State v. Pace*, 602 N.W.2d 764, 773 (Iowa 1999); *State v. Perry*, 145 N.W. 56, 58 (Iowa 1914).

We next address whether there was evidence from which the jury could have inferred Rockingham had the specific intent to commit theft. We may infer intent to commit theft from the fact of entry into an occupied structure when context supports an inference of intent to commit theft. *See* Iowa Code § 702.12 (defining "occupied structure"); 713.1 (establishing "occupied structure" as element of burglary); *State v. Rooney*, 862 N.W.2d 367, 376 (Iowa 2015) (setting forth two-prong test for "occupied structure" requiring "place" and "purpose"); *State v. Oetken*, 613 N.W.2d 679, 686 (Iowa 2000) ("An intent to commit theft may be inferred from an actual breaking and entering of a building which contains things of value."); *State v. Sangster*, 299 N.W.2d 661, 663 (Iowa 1980) ("[D]efendant's intent to commit theft could reasonably be inferred from the evidence of surreptitious entry and other circumstances.").

The facts and circumstances here support a reasonable inference Rockingham intended to commit theft at the time he entered the enclosed porch. The entry was surreptitious. Rockingham entered the porch late at night, long after one would receive visitors. The entry was through the back porch rather than the front door. Rockingham was also wandering outside for a lengthy period of time in the middle of the night committing burglaries of motor vehicles as the opportunities presented themselves. The jury could have inferred his entry into the house was another attempt to commit burglary. *See Goodenough v. State*, No. 07-0854, 2008 WL 2746334, at *3 (Iowa Ct. App. July 16, 2008). The intent

to commit theft is not negated simply because nothing was stolen. *See State v. Erving*, 346 N.W.2d 833, 836 (Iowa 1984).

Finally, there was also credible evidence presented the home was not open to the public and Rockingham did not have permission or authority to enter the home. During his police interview, which was played to the jury, Rockingham stated he went to the residence to see his friend Jose. The owner of the property testified at trial, however, that the property was a rental unit and was vacant on the night at issue. Further, the owner testified Rockingham did not have the right or permission to be on the property.

In sum, there is substantial evidence in support of the jury's verdict. We note that there is substantial evidence Rockingham committed burglary, as the offense was completed when Rockingham entered the enclosed porch with the intent to commit theft. However, the jury acquitted Rockingham of that charge and found him guilty of the lesser included offense of attempted burglary. Under the circumstances, we see no legal reason to disturb the jury's verdict.

## IV.

The district court did not err in denying the defendant's motion to suppress evidence. The defendant's convictions for burglary and attempted burglary are supported by substantial evidence and are affirmed.

**AFFIRMED.**