# IN THE COURT OF APPEALS OF IOWA

No. 18-0132
Filed March 6, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RYAN DALE DUNN,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, Steven P. Van Marel, District Associate Judge.

The defendant appeals from the district court's denial of his motion to suppress. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., Doyle, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**POTTERFIELD, Presiding Judge.**

Ryan Dunn appeals the district court's denial of his motion to suppress. Dunn concedes that he initially engaged in a consensual interaction with police officers but argues actions taken by officers during the encounter resulted in the unconstitutional seizure of his person. He also argues his vehicle was unconstitutionally searched without a warrant and without an applicable exception to the warrant requirement. Finally, Dunn argues, in the alternative, that he was subject to custodial interrogation without receiving a *Miranda* warning.

**I. Background Facts and Proceedings.**

On March 10, 2017, at approximately 1:25 a.m., two police officers—in two separate marked police cars—pulled into an area with freestanding gas pumps but no store or building nearby. The officers pulled in behind a vehicle they noticed had been parked there for several minutes with the driver's door open. According to their testimony, the officers intended to check on the driver and make sure there was nothing wrong with him or the vehicle.

Officer Andrej Klaric exited his vehicle at about the same time Dunn exited the vehicle parked at the gas pump; they met in the space between the two vehicles. Officer Klaric told Dunn he saw his driver's door was open and was "[j]ust making sure everything's okay." Dunn reported he stopped at the gas pump after work and then realized he did not have his debit or credit card with him; he was waiting at the pump until his friend arrived with the card. Dunn and Officer Klaric engaged in a conversation: Dunn told Klaric he remembered him from another time he was stopped and Klaric asked Dunn if he was still working at the same job he had been before. At some point during the conversation, Officer Klaric asked Dunn

for his driver's license; Dunn gave it to him, and Officer Klaric handed it to the second officer, Officer Dilok Phanchantraurai, who checked the license by radioing to dispatch.

While Officer Phanchantraurai had Dunn's license, Officer Klaric asked Dunn if he had any weapons on him. According to Klaric, he did not have any suspicions of illegal activity but always asks about weapons when he makes "contact with somebody out in the field . . . for [his] own safety and their own safety." Dunn responded that he had a pistol in an ankle holster, and Officer Klaric asked Dunn to show him his permit to carry the firearm. Dunn handed Officer Klaric his permit, which had expired more than two months earlier. Officer Klaric then informed Dunn his permit was expired, patted Dunn down, and removed the loaded gun from Dunn's ankle holster.

Officer Klaric asked Dunn if he had any more firearms in the vehicle. Dunn stated there were magazines for a firearm in the vehicle. When asked, Dunn denied consent to search the vehicle. Klaric then handcuffed Dunn and placed him in the back of his squad car. Klaric searched the vehicle and found a second gun and the magazines. He placed Dunn under arrest for carrying a weapon. Before transporting him to the station for booking, Officer Klaric got Dunn's consent to move his car—rather than have it towed. During the booking process, methamphetamine was located in Dunn's wallet.

Dunn was charged by trial information with carrying weapons and possession of a controlled substance (methamphetamine). He filed a motion to suppress, claiming the officers had seized him "after the purpose of the stop had

been resolved," he should have been advised of his *Miranda* rights before being questioned, and the search of his vehicle was unconstitutional.

The district court denied Dunn's motion to suppress. The court found that the initial encounter between Dunn and the officers "was consensual. There was no stop. The officers didn't use their red lights. They didn't pull the defendant over. They just—the defendant was parked, and they just pulled up to him and everybody got out of their car and talked." The court distinguished the facts from the recent *State v. Coleman*, 890 N.W.2d 284, 300–01 (Iowa 2017), in which our supreme court held that an officer could not extend a stop to ask for the driver's identification after the purpose of the stop had been resolved. Here, the district court noted, "[U]nlike *Coleman* this wasn't a stop situation. They didn't stop anybody. They just went up and talked to Mr. Dunn, and then I think we do move into the cases that talk about consensual encounters." Additionally, the district court found:

> It was about as minimally intrusive as a conversation between law enforcement and a citizen can get. The officer's just concerned about his safety, and just asks while we're waiting here talking, making sure the defendant's not armed.
> So I don't think that the question about having a weapon was—was inducing cooperation to answer that question by coercive means. I think it was just a consensual meeting between the officer and the defendant, and I don't think a reasonable person in the position of the defendant would have believed he wasn't free to leave if he hadn't responded. I don't think the officer raised his voice. I don't think he used coercive methods.

Dunn waived his right to a jury trial and agreed to a trial on the stipulated minutes of evidence. At the trial, the State orally moved to dismiss the count for possession of a controlled substance (methamphetamine); the court granted the motion.

The court found Dunn guilty of carrying weapons, in violation of Iowa Code section 724.4(1) (2017).  Dunn appeals.

## II. Standard of Review.

We review de novo a ruling on a motion to suppress raised on constitutional grounds.  *See State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011).  "This review requires 'an independent evaluation of the totality of the circumstances as shown by the entire record.'"  *Id.* (citation omitted).  We give "deference to the factual findings of the district court due to its opportunity to evaluate the credibility of the witnesses," but we are not bound by the district court's findings.  *Id.*

## III. Discussion.

Dunn raises a number of alternative arguments regarding alleged constitutional violations he believes should result in the suppression of evidence.

### A. Seizure.

Dunn concedes that his initial encounter with Officer Klaric—when Dunn exited his vehicle, walked up and met the officer, and began conversing—was a consensual encounter.  However, he maintains he was seized either when Officer Klaric obtained Dunn's license and handed it to Officer Phanchantraurai or when Officer Klaric asked Dunn if he had any weapons on him.

An officer is allowed to "approach[] individuals on the street or in other public places and put[] questions to them if they are willing to listen."  *State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004) (quoting *United State v. Drayton*, 536 U.S. 194, 200 (2002)).  "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, [and] ask for identification . . .

provided they do not induce cooperation by coercive means." *Id.* (quoting *Drayton*, 536 U.S. at 201).

In *Reinders*, our supreme court was asked to determine whether the defendant was "in effect, detained when [officers] asked him for identification because under the totality of the circumstances 'no reasonable person would have felt free to simply walk away and refuse to answer the officer's questions.'" 690 N.W.2d at 83. The court held that "no seizure occurs when an officer merely asks for identification." *Id.* (citing *State v. Smith*, 683 N.W.2d 542, 543 (Iowa 2004)). In reaching this conclusion, the court noted, "there was no show of authority, no intimidation, and no use of physical force by the officers in their encounter with [the defendant]." *Id.* Additionally, the court "found no basis to distinguish the protections afforded by the Iowa Constitution from those afforded by the federal constitution under the facts of this case," and its "discussion of the merits of the defendant's motion to suppress applies equally to the state and federal grounds." *Id.* at 82.

Dunn argues the supreme court's ruling in *Coleman* changes our analysis and requires us to consider whether the initial reason for the police officers' involvement with Dunn was completed before he was asked to provide his identification. We disagree. *Coleman* contemplated the extension of a traffic stop beyond the time it was reasonably necessary to complete the stop. 890 N.W.2d at 300–01. But, as the district court noted and Dunn conceded, this encounter between the officers and Dunn did not begin as a traffic stop. We agree that *Coleman*—and *Rodriguez v. United States*, 135 S. Ct. 1609, 1612–17 (2015)— stand for the proposition that officers are only allowed to detain a person so long

as they have a reasonable suspicion or probable cause to support doing so. But the point of a consensual encounter is that the person is not being detained by law enforcement—they are participating at their own choice, without being coerced to do so. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991) (noting a seizure does not occur if a reasonable person would feel free to disregard the police and go about their business); *State v. Wilkes*, 756 N.W.2d 838, 843 (Iowa 2008) ("It . . . appears that objective indices of police coercion must be present to convert an encounter between police and citizens into a seizure."). Thus, we agree with the State that the appropriate question is whether the actions of the officers converted the encounter from one of a consensual nature to a seizure. *See Wilkes*, 756 N.W.2d at 843.

The district court credited the officers' testimony that Officer Klaric and Dunn "just talked" without any coercive actions taken on the part of Officer Klaric. There was no indication Dunn ever indicated he did not want to provide Klaric with his identification or answer the question about whether Dunn was armed. *See Reinders*, 690 N.W.2d at 82 ("Clearly, though, when a citizen exercises his right to refuse to answer questions and the authorities take additional steps to elicit the requested information, a seizure or detention has occurred."). Although Dunn was not told he was free to leave or to refuse to participate in the conversation, an individual's response to questions can be consensual "even though the person has not been advised that he is free to refuse to respond." *Id.* The officers made no show of authority, other than wearing their uniforms and arriving in marked police cars. *See id.*; *see also Wilkes*, 756 N.W.2d at 843 (noting "coercion is not established by ordinary indicia of police authority"; merely showing a badge,

wearing the uniform, or being visibly armed should have little weight in the analysis). Dunn argues the fact that Officer Klaric handed his license to Officer Phanchantraurai effectively meant Dunn could not leave, but our supreme court was faced with similar facts in *Reinders*—where the officer took identification from the defendant and then walked away to his squad car to check the information— and found that no seizure had taken place, as "[t]he defendant willingly answered the officers' questions and provided identifying information." 690 N.W.2d at 83.

Based on the testimony the district court found credible, nothing in the record convinces us Dunn was seized by the officers during the time Dunn and Officer Klaric spoke. *See id.* at 82 ("A seizure occurs when an officer by means of physical force or show of authority in some way restrains the liberty of a citizen." (quoting *State v. Pickett*, 573 N.W.2d 245, 247 (Iowa 1997))).

**B. Search of Automobile.**

Dunn maintains the search of his automobile violated his constitutional rights and evidence should be suppressed as result. We agree with the State that even if Dunn's car should not have been searched, the admission of any evidence found in the car—the second gun and the magazines—was harmless error. *See State v. Turner*, 630 N.W.2d 601, 609 (Iowa 2001) ("In order for constitutional error to be harmless, the court must be able to declare it harmless beyond a reasonable doubt." (citation omitted)). There were three alternatives the State could establish in order to obtain a conviction for carrying weapons: "that [Dunn] did go armed with a dangerous weapon concealed on or about the person; or that he was armed with a loaded firearm within the city limits of Ames, Iowa; or that he did knowingly carry a loaded pistol in a vehicle." *See* Iowa Code § 724.4(1). Here, the court concluded

the State met its burden as to all three alternatives. But only one alternative was necessary for a guilty verdict, and even if the evidence of the second gun was suppressed, there is no reason to believe it would change the court's ruling as to the first two alternatives.

We do not consider this argument further.

**C. Custodial Interrogation.**

Dunn maintains he was in police custody and subjected to interrogation "once Klaric requested and retained his driver's license and then conducted a weapons inquiry." *See Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966) (requiring a person to be advised of certain constitutional rights so long as the person is both in custody and subjected to interrogation). Although the State does not contest error preservation, Dunn recognizes error may not have been preserved on this argument and asks, in the alternative, that we consider this claim under the framework of ineffective assistance of counsel. *See State v. Lucas*, 323 N.W.2d 228, 232 (Iowa 1982) (recognizing a claim of ineffective assistance of counsel is an exception to the general rule of error preservation). The district court denied Dunn's motion to suppress, but we have not found any indication the court considered and ruled upon Dunn's argument regarding custodial interrogation and the lack of a *Miranda* warning. Thus, we consider Dunn's claim under the ineffective-assistance framework.

To succeed on his claim, Dunn has the burden to "show by a preponderance of the evidence that his trial counsel failed to perform an essential duty and prejudice resulted." *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006). Here, Dunn's claim fails because "counsel has no duty to raise issues that have no merit."

*State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009). As we have already determined, Dunn was not seized by the police officers during the time he chose to engage in conversation with Officer Klaric. And Dunn cannot be in police custody when he was not even seized. *See, e.g.*, *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) ("The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*."); *State v. Scott*, 518 N.W.2d 347, 350 (Iowa 1994) ("The right to interrogate during a 'stop' is the essence of *Terry* and its progeny." (citation omitted)).

**IV. Conclusion.**

We affirm the district court's denial of Dunn's motion to suppress.

**AFFIRMED.**