STATE of Iowa, Appellee,

v.

Frederick Darnell CARTER, Appellant.

No. 03–0807.

Supreme Court of Iowa.

May 6, 2005.

Linda Del Gallo, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, John P. Sarcone, County Attorney, and Charles Kenville, Assistant County Attorney, for appellee.

LAVORATO, Chief Justice.

The district court in a bench trial found the defendant, Frederick Darnell Carter, guilty of possession of a controlled substance (crack cocaine) with intent to deliver. The controlled substance was found in the vehicle Carter was driving at the time he was stopped by the police. He appealed, contending that the district court erred in denying his motion to suppress because the police lacked probable cause to search the vehicle. He also contended that there was insufficient evidence to support his subsequent conviction. We transferred the case to the court of appeals. That court reversed, finding there was insufficient evidence for the conviction.

We granted the State's application for further review. On that review, we now conclude that the district court correctly denied Carter's motion to suppress and that there was sufficient evidence to sustain the conviction. We therefore vacate the court of appeals decision and affirm the district court judgment.

## I.   Background Facts.

Des Moines Police Officers Sean Wissink and Jeff Edwards were on patrol together in their police vehicle during the evening of December 16, 2002 and the early morning hours of December 17. Wissink was driving.

While the officers were stopped for a red light at the intersection of 19th and Clark Street, they saw a black 1991 Chevy Blazer with its front license plate in the dash rather than affixed to the bumper in violation of Iowa Code section 321.37 (2001) (display of plates). The officers were northbound on 19th, and the Blazer was westbound on Clark.

Wissink got behind the Blazer and tried to stop it by activating the emergency equipment of the police vehicle. Rather than stopping, the Blazer turned onto M.L. King Jr. Parkway, crossed three lanes of traffic, struck the curb, and just missed a light pole. While all of this was going on, Wissink saw the driver of the Blazer making movements with his right hand all the way down to the floorboard, causing his head to go down so he could not see the road.

After the Blazer struck the curb, the driver quickly exited the vehicle, left the

door open, and appeared nervous. Wissink thought he would have to chase the driver on foot so he exited the police vehicle and handcuffed him. Wissink asked the driver for identification but he had none. However, the driver did identify himself as Daryl Saunders and quickly provided the officer a birth date and social security number. Wissink then walked the driver to Edwards, who was between the two vehicles.

After walking the driver to Edwards, Wissink went back to the Blazer, which was still running, looked inside to make sure the car was in park, and saw two inches of a baggie sticking out of the ashtray of the center console. The baggie was in the same area toward which the driver of the Blazer was moving his hand just prior to the stop.

Wissink's observation of the baggie, coupled with the driver's movements and erratic driving, led the officer to believe that the baggie contained narcotics and that the driver was trying to conceal the baggie by putting the baggie under the ashtray. Wissink had seen baggies used in connection with narcotics before and had made many narcotics arrests out of vehicles in this same area. Up to this time, Wissink had worked in the neighborhood area of the stop for nearly six years. Wissink lifted the ashtray and found in the baggie what appeared to the officer to be six individually wrapped rocks of crack cocaine. A later field test confirmed the items in the baggie were cocaine.

The driver of the Blazer expressed surprise at the discovery of the drugs and claimed they were not his. He had $6.09 on his person, did not have a cell phone, pager, or drug notes.

At the time of the stop, Edwards focused on the passenger, who identified himself as Sidney Saunders. Saunders remained in the Blazer. Edwards approached the passenger side of the Blazer and removed Saunders from it. At this point Saunders was not in handcuffs because he was compliant.

After Wissink relayed the driver's identifying information to Edwards, Edwards ran a warrant and driver's license check on Sidney Saunders and Daryl Saunders. The checks on Daryl Saunders came back clear while the checks on Sidney Saunders revealed that he had two outstanding warrants for his arrest. Edwards then placed Sidney Saunders under arrest. Saunders had $295.75 on his person.

Upon the field confirmation that the items in the baggie were crack cocaine, the officers placed the driver under arrest for possession of a controlled substance with intent to deliver and failure to display a registration plate. The officers also arrested Sidney Saunders for possession of a controlled substance with intent to deliver. As events unfolded, it was determined that the driver of the Blazer was not Daryl Saunders but actually Frederick Darnell Carter.

## II. Proceedings.

On January 17, 2003, the State charged Carter with possession of a controlled substance with intent to deliver in violation of Iowa Code section 124.401(1)(c)(3). Later, Carter filed a motion to suppress the cocaine seized from the Blazer. He alleged that the stop and seizure of his person and subsequent search of the Blazer lacked probable cause, a warrant, and voluntary consent. He also alleged that the stop, seizure, and search did not fall within any of the recognized exceptions to the Fourth Amendment to the federal constitution and article I, section 8 of the Iowa Constitution.

Following a hearing on the motion, District Judge Douglas F. Staskal denied it,

concluding that because Wissink had probable cause to search the Blazer and because of the mobility of the vehicle, the search was proper.

Carter waived his right to a jury trial, and the case was tried to District Judge Glenn E. Pille, who found Carter guilty as charged. Judge Pille imposed a sentence of incarceration not to exceed ten years, suspended that sentence, and placed Carter on probation.

Carter appealed, contending the district court erred in overruling his motion to suppress. He also contended that there was insufficient evidence to convict him of possession of a controlled substance with intent to deliver.

We transferred the case to the court of appeals. The court of appeals reversed the judgment of conviction and remanded the case for entry of an order of dismissal. The court based its decision on Carter's sufficiency-of-the-evidence challenge and did not reach the motion-to-suppress issue.

We granted the State's application for further review.

### III. Issues.

On Carter's application for further review, we consider two issues: whether the district court erred in (1) overruling Carter's motion to suppress and (2) finding there was sufficient evidence to support his conviction.

### IV. Scope of Review.

Because Carter's motion to suppress was based on alleged constitutional violations, our review of that ruling is de novo. *State v. McConnelee*, 690 N.W.2d 27, 30 (Iowa 2004). We evaluate the totality of the circumstances found in the record. *State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004). In our review of the suppression ruling, we consider not only the evidence at the suppression hearing but also the evidence at trial. *State v. Crawford*, 659 N.W.2d 537, 541 (Iowa 2003). We give deference to the district court's fact findings because of that court's ability to assess the credibility of the witnesses. *Id.* However, we are not bound by those findings. *Id.*

We recently stated the standards governing review of an appeal based on a challenge to the sufficiency of the evidence:

> We review sufficiency-of-the-evidence claims for correction of errors at law. We uphold a verdict if substantial evidence supports it. "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." Substantial evidence must do more than raise suspicion or speculation. We consider all record evidence not just the evidence supporting guilt when we make sufficiency-of-the-evidence determinations. However, in making such determinations, we also view the "evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence."

*State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005) (citations omitted).

### V. The Suppression Ruling.

Carter contends here as he did in the district court that the officers did not have probable cause to search the vehicle and therefore the search was in violation of the Fourth Amendment of the federal constitution and article 1, section 8 of the Iowa Constitution. Both provisions protect persons from unreasonable searches and seizures. *Reinders*, 690 N.W.2d at 81. "Evidence obtained in violation of these provisions is inadmissible 'no matter how relevant or probative the evidence may

be.'" *Id.* (citation omitted). The Fourteenth Amendment of the federal constitution makes the Fourth Amendment binding on the states. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961).

▮ "Because the federal and state search-and-seizure clauses are nearly identical," federal cases interpreting the federal provision are persuasive in our interpretation of the state provision. *Reinders*, 690 N.W.2d at 81–82. However, such cases are not binding on this court regarding our interpretation of the state provision. *Id.* at 82. Because Carter has not asserted and we have not found a basis to distinguish the protection afforded by the Iowa Constitution from those afforded by the federal constitution under the facts of this case, our analysis applies equally to both the state and federal grounds. *See id.*

Carter does not challenge the stop, only the search. Our analysis is therefore restricted to the search.

▮▮ A warrantless search like the one here is per se unreasonable unless it falls within a recognized exception. *State v. Cline*, 617 N.W.2d 277, 282 (Iowa 2000), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n. 2 (Iowa 2001). One of those exceptions exists when there is probable cause for the search, and exigent circumstances require that the search be conducted immediately. *Id.* Evidence obtained in violation of the constitutional provisions against unreasonable searches is inadmissible unless the State proves by a preponderance of the evidence that this exception applies. *Crawford*, 659 N.W.2d at 541.

▮ A police officer has probable cause to search a motor vehicle

"when the facts and circumstances would lead a reasonably prudent person

to believe that the vehicle contains contraband. The facts and circumstances upon which a finding of probable cause is based include 'the sum total ... and the synthesis of what the police [officer has] heard, what [the officer] knows, and what [the officer] observe[s] as [a] trained officer[ ].'"

*State v. Gillespie*, 619 N.W.2d 345, 351 (Iowa 2000) (omission in original) (alterations in original) (citation omitted), *overruled on other grounds by Turner*, 630 N.W.2d at 606 n. 2. "The determination of probable cause, as the name implies, is based on probabilities and not mere suspicion." *Id.* Nor must it rise to the level of certainty beyond a reasonable doubt. *Carter v. MacMillan Oil Co.*, 355 N.W.2d 52, 57 (Iowa 1984).

▮ Exigency exists when the vehicle is mobile and its "'contents may never be found again if a warrant must be obtained.'" *Gillespie*, 619 N.W.2d at 351 (citation omitted). Carter makes no claim regarding the absence of exigency here. So we focus our analysis on whether there was probable cause for the search.

Applying these principles here and considering the totality of the circumstances, we find, for reasons that follow, that the State has proven by a preponderance of the evidence probable cause to search the vehicle.

The officers were patrolling late at night in an area where Officer Wissink had in the past made many narcotics arrests out of vehicles. Their attention was drawn to the Blazer because of a license plate violation. When Wissink signaled the Blazer to stop, he saw Carter digging around the area of the center console with his right hand and ducking below the dash. While this was happening, the Blazer crossed three lanes of traffic and struck a curb. Carter exited the vehicle so quickly that he

left the door open, and he appeared nervous. Because Wissink thought Carter would run, he hurriedly handcuffed him. Carter had no identification on his person and identified himself as Daryl Saunders, the real owner of the Blazer.

Approaching the Blazer, Wissink looked in and saw in plain view two inches of a baggie sticking out of the ashtray of the center console. The baggie was in the area where Carter was digging around just after Wissink signaled him to stop. In his experience as a police officer, Wissink has seen baggies used in narcotics. At trial when asked about the baggie, Wissink testified as follows:

> I pretty much knew it was narcotics. It was pretty consistent. Nothing else would be hidden under an ashtray in a baggie.
>
> Q. What else about that is—that made you sure that that was going to be narcotics? A. It was right where he was digging with his hand during the furtive movement when he was trying to turn the corner, failed to do so.

The sum total of these facts together with Wissink's experience and knowledge would lead a reasonable person to believe that evidence of a crime would be discovered under the ashtray. Armed with such probable cause, Wissink could lawfully search under the ashtray. *See California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619, 634 (1991) (police may search an automobile and containers within it when they have probable cause to believe contraband or evidence is contained in those places). The district court did not err in overruling Carter's motion to suppress.

Other courts have found that a plastic baggie is a commonly used container for narcotics and when seen in an unusual setting can tip the scales in favor of probable cause for a search. *See, e.g., People v.*

*Hilt*, 298 Ill.App.3d 121, 232 Ill.Dec. 395, 698 N.E.2d 233, 236 (1998) (following traffic stop in early morning hours, police officer's observation of torn and knotted baggie in plain view inside car, together with officer's knowledge of drug packaging and that drug dealing often occurred in the area in early morning hours, provided officer with probable cause to conduct warrantless search of car).

That brings us to the question of whether there was sufficient evidence to sustain Carter's conviction.

## VI. Sufficiency of the Evidence.

■ The district court convicted Carter of possessing cocaine with the intent to deliver in violation of Iowa Code section 124.401(1)(c)(3). This provision provides in relevant part that "it is unlawful for any person to ... possess with the intent to ... deliver, a controlled substance." Iowa Code § 124.401(1). The only issue here is whether Carter possessed the controlled substance.

■ To prove unlawful possession of a controlled substance, the State must prove that the defendant

> (1) exercised dominion and control [i.e., possession] over the contraband, (2) had knowledge of its presence, and (3) had knowledge that the material was a controlled substance. Proof of opportunity of access to the place where contraband is found will not, without more, support a finding of unlawful possession.

*State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003) (citation omitted).

> Possession can be either actual or constructive. Actual possession occurs when the controlled substance is found on the defendant's person. Constructive possession occurs when the defendant has knowledge of the presence of the

controlled substance and has the authority or right to maintain control of it. *Id.* at 138 (citations omitted).

Contrary to the State's contention, we find that Carter did not have actual possession of the controlled substance because it was not found on his person. What remains then is whether Carter had constructive possession.

■ The State is aided in its burden to prove constructive possession by recognized inferences:

> possession may be imputed when the [controlled substance] is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another.

*State v. Reeves*, 209 N.W.2d 18, 22 (Iowa 1973). This inference is not available here because Carter did not have exclusive access to the place where drugs were found; the passenger in his car also had access to the console where the drugs were discovered.

*Reeves* also recognized an inference arising from the exclusive possession of the premises where contraband is found:

> If the premises on which such substances are found are in the exclusive possession of the accused, knowledge of their presence on such premises coupled with his ability to maintain control over such substances may be inferred.... *But where the accused has not been in exclusive possession of the premises but only in joint possession, knowledge of the presence of the substances on the premises and the ability to maintain control over them by the accused will not be inferred but must be established by proof.*

*Id.* at 23 (emphasis added). Because Carter and his passenger were in joint posses-

sion of the vehicle in which the drugs were located, the inference of possession arising from exclusive possession of premises cannot assist the State in this case. Thus, Carter's constructive possession of the cocaine found in his vehicle must be supported by other facts and circumstances shown by the record.

■ When the accused has not been in exclusive possession of the premises, several factors are considered in determining whether the accused had constructive possession of the controlled substance. Such factors include: (1) incriminating statements made by the accused, (2) incriminating actions of the accused upon the police's discovery of a controlled substance among or near the accused's personal belongings, (3) the accused's fingerprints on the packages containing the controlled substance, and (4) any other circumstances linking the accused to the controlled substance. *State v. Webb*, 648 N.W.2d 72, 79 (Iowa 2002).

■ When the "premises" involve a motor vehicle, a court may consider these additional factors: (1) was the contraband in plain view, (2) was it with the accused's personal effects, (3) was it found on the same side of the car seat as the accused or immediately next to him, (4) was the accused the owner of the vehicle, and (5) was there suspicious activity by the accused. *State v. Kemp*, 688 N.W.2d 785, 789 (Iowa 2004) (citing *State v. Atkinson*, 620 N.W.2d 1, 4 (Iowa 2000)). We have pointed out that all of these factors are only a guide in determining whether the State has established constructive possession. *Id.* And

> "[e]ven if some of these facts are present, we are still required to determine whether all of the facts and circumstances ... allow a reasonable inference that the defendant knew of the [con-

trolled substance's] presence and had control and dominion over [it]." *Id.* (ellipsis in original) (citation omitted); *see also Reeves,* 209 N.W.2d at 22 ("Knowledge of the narcotic character . . . of the drug, as well as of their presence . . . may be shown by the conduct, behavior and declarations of the accused.").

Constructive possession cannot rest on mere proximity to the controlled substance. *State v. Cashen,* 666 N.W.2d 566, 572 (Iowa 2003); *see also Atkinson,* 620 N.W.2d at 3, 4. Moreover, furtive movements alone cannot support a finding of constructive possession. *Atkinson,* 620 N.W.2d at 4. In addition, the right to maintain control is something more than the "raw physical ability" to exercise control over the controlled substance. *Bash,* 670 N.W.2d at 139. Rather, the accused must have "some proprietary interest or an immediate right to control or reduce the controlled substance to the [accused's] possession." *Id.*

Carter correctly points out that the controlled substance itself was not in plain view, the controlled substance was found in the center console underneath an ashtray which did not contain any of Carter's personal effects, and the center console was close and equally accessible to the driver and the passenger. Moreover, although Carter was driving the Blazer, he was not the owner, and he denied knowledge of the controlled substance. Nor was there any evidence of fingerprints on the package, or that Carter was under the influence of a controlled substance, or that he had any drug paraphernalia on his person.

On the other hand, Carter engaged in suspicious activity before and after the stop. When Wissink signaled for him to stop, Carter did not do so immediately. In fact, he turned onto another street, began rummaging to the right of him, veered across three lanes of traffic while his head was down, and struck the curb while his attention was focused on the console area rather than driving. When the Blazer came to a stop, Carter quickly exited the vehicle, left the driver's door open, and appeared nervous. Wissink thought he would have to chase Carter on foot. In the almost six years, Wissink has worked in this particular neighborhood, he has made many narcotics arrests out of cars. When asked for identification, Carter did not give his true name. When asked why the collision with the curb occurred, Carter said the Blazer stalled. Yet when Wissink approached the Blazer, the engine was still running.

The controlled substances were found on the driver's side of the console; they were within close reach of Carter while he was operating the Blazer. Although the controlled substances were not in plain view, their container—a baggie—was. Baggies are known for their use in the drug trade, and Wissink has seen baggies used for holding narcotics. The baggie was in a location where one would not ordinarily leave a plastic baggie—underneath an ashtray. The place where the controlled substances were found is the same place toward which Carter was rummaging while the police were attempting to stop the vehicle. Neither officer saw the passenger making any furtive movements. Following the stop, the passenger denied the controlled substances were his and cooperated with the police. *Cf. State v. Henderson,* 696 N.W.2d 5, 9 (Iowa 2005) (drugs were found on premises occupied by the defendant and her guest; defendant was belligerent towards police whereas guest was cooperative, acted like she had nothing to hide, and denied the drugs were hers; such disparate reactions supported permissible inference that the drugs belonged to the defendant).

Viewing all of the evidence in the light most favorable to the State, we think the district court could reasonably infer that Carter was exhibiting a proprietary interest in the controlled substances by desperately trying to hide them while the police were pursuing him, resulting in his losing control of the Blazer. Moreover, Carter's furtive movements in contrast to the passenger's lack of such movements would further support such an inference. Wissink's explanation of what happened is a reasonable one:

> I believe he was placing narcotics under the ashtray trying to conceal them. And when the vehicle struck the curb, he didn't have enough time to stick the baggie down in there, leaving the two inches out of it. That's why he exited the vehicle. If he had the opportunity, he would have run off with it.

All in all, we think this evidence was sufficient for the district court to reasonably infer that Carter knew of the controlled substances' presence and exercised control and dominion over them. Because Carter does not contend there was insufficient evidence on intent to deliver, that issue is conceded. We would, however, note that there was ample record evidence on this element. In short, there was sufficient evidence to support the conviction.

### VII. Disposition.

Because we find there was probable cause and exigent circumstances for the search, we conclude the district court correctly denied the motion to suppress. In addition, we conclude there was sufficient evidence to sustain Carter's conviction of possession of a controlled substance with intent to deliver. We therefore vacate the court of appeals decision and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**