# IN THE COURT OF APPEALS OF IOWA

No. 18-0931
Filed February 5, 2020

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**JERRY J. ODEN, JR.,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Marshall County, Steven J. Oeth, Judge.


 A defendant challenges the sufficiency of the evidence for his drug convictions. **AFFIRMED.**


 Chad R. Frese of Kaplan & Frese, LLP, Marshalltown, for appellant.

 Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


 Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

The district court found Jerry Oden, Jr. guilty of conspiring to deliver heroin and possession of marijuana with intent to deliver. On appeal, Oden contests the sufficiency of the evidence for those convictions. He emphasizes inconsistencies in the testimony of the State's witness, Andrew Hilleman. After giving due deference to the factfinder's credibility assessment, we affirm Oden's convictions.

## I.  Facts and Prior Proceedings

Two hours after he sent a text message to Oden's phone asking if he could "come buy one," employees of a Kwik Star in Marshalltown found Hilleman on the floor of the women's restroom in their convenience store. The employees called police. Officer Eric Siemens was the first to respond to the scene. The officer found Hilleman unresponsive, but alive. A plastic spoon containing a white residue rested next to Hilleman on the floor. On the diaper-changing station, Officer Siemens found cotton swabs, car keys, and a wallet.

Next to arrive was paramedic Melinda Cross. She noted Hilleman was emitting snoring sounds and had pinpoint-sized and non-reactive pupils, cool skin, and a bluish tinge around his lips. Suspecting Hilleman had overdosed on opioids, paramedics administered Narcan to counter the effects. While starting the Narcan intravenously, Cross found a hypodermic needle under Hilleman. She handed it over to police. Officer Siemens also collected the spoon, swabs, and a pea-sized sand-colored rock. A field test revealed one of the cotton swabs had absorbed an opioid.

After receiving the Narcan, Hilleman woke up and began vomiting. His breathing improved. The paramedics transported him to the hospital. When asked by the paramedics, Hilleman denied taking any drug.

Three days later, Hilleman started working with the Mid Iowa Drug Task Force. He identified Oden and Jamie Connett as his sources for heroin. Hilleman told Detective Chad Hillers that Connett kept heroin in the freezer at her house. The detective determined that between April and August 2017, Oden, Connett, and Hilleman had been involved in several drug transactions.

The police identified the Marshalltown addresses for Oden and Connett. Officers executed search warrants simultaneously at both residences. At Connett's place, officers found marijuana in her dining-room hutches. In particular, investigators located a Girl Scout tin containing one dozen individually wrapped baggies of marijuana—six weighing between 1.1 and 1.2 grams and six weighing between 3.1 and 3.3 grams. The tin also contained another clear baggie of marijuana. In a second hutch, investigators found another baggie of marijuana and a digital scale. The total weight of the seized marijuana was 14.18 grams. At Connett's residence, investigators found little evidence of marijuana usage, for example, no pipes or rolling papers.

Investigators looked inside Connett's freezer but did not verify Hilleman's contention they would find heroin. Investigators did find a baggie with a residue different than marijuana in a laundry basket in the dining room.

At Oden's residence, SWAT team members discovered Oden sitting just inside the front door. Investigators discovered two cell phones side by side on an end table. Detective Hillers called the number Hilleman had provided, and one of

the phones rang. Investigators also discovered cash and a scale with drug residue. They searched the basement and found a plastic baggie with residue, hypodermic needles, caps, and a spoon with some residue.

The State charged Oden with ongoing criminal conduct in violation of Iowa Code section 706A.2(4) (2017), delivery or possession with intent to deliver heroin in violation of section 124.401(1)(c)(1), and possession of marijuana with intent to deliver in violation of section 124.401(1)(d).

At trial, Hilleman acknowledged his drug use—"mainly opiates, dabbled in heroin a little bit." Hilleman testified he met Oden through two acquaintances— James and Precious Douglas. The Douglases were living in Oden's basement. Hilleman testified James and Precious would sometimes supply painkillers and opioids to him. Connett was another source of drugs for Hilleman. She testified Oden would arrive at her home with a "white powder" packaged for sale and would place it inside her freezer. Hilleman corroborated this testimony and said that Connett retrieved the heroin from her freezer during purchase transactions.

The State introduced a number of text messages as evidence of drug transactions. Investigators extracted these messages from the cell phones seized at Oden's residence. No explicit language describing drug deals appeared in messages. But the district court accepted the State's position that the terms "on the way for 60," "on the way to get a 60," "James or Precious coming to get one green," "[j]ust 1 gram," and "he said do 60" all referred to drug dealing.

The district court acquitted Oden on the count of ongoing criminal conduct but convicted him on the other two drug offenses. The court noted "after considering Hilleman's appearance and demeanor while testifying and considering

his explanation for not telling the truth, the court accepts his testimony that he obtained the heroin" from Oden through Connett. The court also concluded Oden and Connett were "co-conspirators relative to the sale of marijuana."

Oden appeals the court's verdicts.

## II. Scope and Standards of Review

We review claims of insufficient evidence in bench trials no differently from those challenges in jury trials. *State v. Myers*, 924 N.W.2d 823, 826–27 (Iowa 2019). If substantial evidence supports the court's verdict, we will affirm. *Id.* We view the record in the light most favorable to the verdict. *Id.* Our substantial-evidence review is for errors at law. *Id.*

## III. Analysis

Oden challenges the sufficiency of the State's evidence to support the court's conclusion that he committed two drug offenses—delivery or possession with intent to deliver heroin and possession of marijuana with intent to deliver. We will address each count in turn.

### A. Delivery or possession of heroin with intent to deliver

The district court found Oden conspired with Connett to deliver heroin to Hilleman. To uphold that finding, we must determine the State proved beyond a reasonable doubt (1) Oden and Connett agreed one or both of them would deliver heroin; (2) Oden entered into the agreement with the intent to promote or facilitate that delivery; (3) Oden, Connett, or both committed an overt act in furtherance of their common plan; and (4) Connett was not a law enforcement agent or assisting

law enforcement agents in the investigation when the conspiracy began.[1] *See* Iowa Code §§ 124.401(1)(c), 706.1.

On appeal, Oden contends the State was required to prove he distributed heroin to Hilleman on the date of the overdose. Oden points out Hilleman did not admit to the paramedics he had taken drugs but testified at trial that it was Connett who handed him the heroin that day. Oden further challenges the State's theory because Hilleman testified he obtained a powder substance from Connett and not the rock form the police discovered in the Kwik Star bathroom. Oden also suggests Precious Douglas was another plausible source for Hilleman's heroin.

In its ruling, the district court rejected Oden's arguments. The district court recognized Hilleman's credibility flaws but accepted his explanation for not telling the truth to the paramedics. The district court also relied on the text message exchanges between Connett and Oden to conclude that Oden was involved in drug distribution. The district court considered Connett's denial that she distributed heroin to Hilleman on the day of the overdose. Because Connett acknowledged many deliveries of white substance on Oden's behalf, the district court believed she simply forgot about that specific delivery. After reviewing the record, we believe the State met its burden of proof. We defer to the district court's fact finding because it was in a better position to weigh the credibility of the witness. *See State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000).

First, we find sufficient evidence Oden and Connett agreed to deliver heroin. Connett testified she was involved in the sale of drugs with Oden. She testified

---

[1] Oden does not challenge the fourth element.

Oden would arrive at her home with "white powder" packaged for sale and would place it in her freezer. Corroborating Connett's testimony, Hilleman testified he would retrieve the heroin from Connett's freezer whenever he made a purchase. Moreover, text messages retrieved from Oden and Connett outlined and corroborated a drug scheme.

Second, Oden entered into an agreement with the intent to promote or facilitate the heroin delivery. Text messages and Hilleman's testimony revealed that parties would ordinarily contact Oden to arrange a transaction but would sometimes text Connett directly regarding product price and availability. After Oden arranged sales, buyers would arrive at Connett's home to pick up their purchases. Sometimes Oden would personally conduct the transaction at Connett's home. Text messages also demonstrated Oden and Connett coordinated to complete sales whenever Connett would be out of the house or Oden was unavailable.

Third, the State produced evidence both Oden and Connett committed overt acts in furtherance of the conspiracy. Connett would collect drug-sales money for Oden. Oden had keys and access to Connett's home. And critically, Hilleman's testimony about his drug purchases from Oden found corroboration in their text messages. Whether the overt acts occurred on the date of the overdose is not a material element of the conspiracy offense. *See State v. Griffin*, 386 N.W.2d 529, 532 (Iowa Ct. App. 1986) (where the date is not a material element of the crime, the State has no burden to prove when the offense occurred).

When viewed in the light most favorable to the State, the evidence substantially supported the court's verdict.

### B. Possession of marijuana with intent to deliver

Oden also challenges his conviction for possession of marijuana with intent to deliver under Iowa Code section 124.401(1)(d). He claims the State's evidence "failed on the element of possession."

Under Iowa law, a person has constructive possession of a controlled substance "when the [person] has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it." *State v. Carter*, 696 N.W.2d 31, 38–39 (Iowa 2005) (citation omitted). The State may establish possession by direct or circumstantial evidence such as (1) incriminating statements; (2) incriminating actions upon the police discovery of a controlled substance among or near the person's belongings; (3) fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance. *See State v. Maxwell*, 743 N.W.2d 185, 194 (Iowa 2008). The State argues under those guiding factors, the evidence supports Oden's constructive possession of the marijuana. *See id.* The State points to Connett's testimony, the cell phone data and the corroborating circumstances, including Hilleman's testimony he had first contacted Oden to obtain marijuana.

Oden wishes to dissociate himself from the marijuana found at Connett's residence during the execution of the search warrant. Oden argues that because Connett testified she would deal drugs on her own and have people contact her directly for marijuana, the court should not have found him guilty as her accomplice. The district court rejected that argument, finding the text messages established both Connett and Oden participated in the marijuana sales.

We find substantial evidence to support Oden's constructive possession of the marijuana. A reasonable reading of the text messages backed the district court's conclusion both Oden and Connett were involved in the marijuana sales. The court could believe Connett's testimony that she gave the sale proceeds to Oden. Much of the marijuana was packaged for sale. A scale was found near the raw marijuana. These circumstances confirmed the drugs belonged to Oden; Connett's home was a place of storage. *See State v. Maghee*, 573 N.W.2d 1, 10 (Iowa 1997) (finding constructive possession where drug dealer had joint authority or right to maintain control over controlled substance). The State offered sufficient evidence to convict Oden of possession of marijuana with intent to deliver.

**AFFIRMED.**