# IN THE COURT OF APPEALS OF IOWA

No. 19-0542
Filed September 2, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOHN GREEN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Peter B. Newell, District Associate Judge (felon in possessin of a firearm conviction), and Gregg R. Rosenbladt, Judge (drug-related convictions).


John Green appeals his convictions for felon in possession of a firearm, possession with intent to deliver cocaine, possession with intent to deliver marijuana, and two counts of failure to affix a drug tax stamp.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.


John J. Sullivan of Sullivan Law Office, P.C., Oelwein, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik, Assistant Attorney General, for appellee.


Considered by Tabor, P.J., Schumacher, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

John Green appeals his convictions for felon in possession of a firearm; possession with intent to deliver with intent to deliver cocaine; possession with intent to deliver marijuana; and two counts of failure to affix drug tax stamp. We affirm in part and reverse in part.

## I. Facts and Prior Proceedings

On September 12, 2018, the Nora Springs Police Department executed a search warrant on a local apartment where they found Green watching his son. The mother of the child, Artesian Johnson, began renting the apartment that July.

But police located a number of Green's personal effects around the apartment indicating he also resided at the apartment. For example, they noted a picture of Green and his daughter[1] displayed in the apartment. Police also found men's shoes and clothing in the apartment. And police found a container filled with mail addressed to Green at various addresses, bank cards with Green's name on them, and an identification card bearing Green's photo.

That container also contained a thirty-three round extended handgun magazine for a 9-millimeter pistol. Police also discovered a second magazine for a 9-millimeter handgun.

Chief Jessie Dugan retrieved a ladder from city hall so he could reach the ceiling to search it. In his search, Chief Dugan located a Smith and Wesson 9-millimeter handgun. And he located a large baggie of white powder hidden above

---

[1] Johnson is not the mother to the child in the picture.

a hallway ceiling tile. Subsequent testing confirmed the white powdery substance was 24.91 grams of cocaine.

Officer Chuck Bengtson found two "dime bag" baggies of marijuana tucked in a men's shoe. Officer Bengston also found a jar of marijuana under a dresser, and "marijuana shake" on the floor. Officers also searched Green's car and found marijuana shake on the floor. Police recovered 57.1 grams of marijuana in total—the jar contained 50.2 grams, the two dime bags contained 0.3 grams and 0.4 grams, and a fourth unspecified container contained 6.2 grams.

The State then charged Green as a felon in possession of a firearm in case number FECR027269. The matter proceeded to a jury trial. Green filed a motion in limine to exclude photos of the marijuana and cocaine found in the apartment. The district court excluded all of the photos of drugs except State's Exhibit 2 depicting the gun in the ceiling next to the bag of white powder. The court required the State's witnesses to refer to the drugs as "contraband." Green objected on grounds of relevance when the State moved to admit Exhibit 2, but the court overruled his objection and admitted the evidence. Green stipulated to his felon status. Then he moved for judgment of acquittal both at the close of the State's case-in-chief and following presentation of his own evidence, arguing the State presented insufficient evidence that he "knowingly possessed, received, transported, or had under his dominion and control a firearm." The district court denied both motions. And the jury found Green guilty.

During the pendency of FECR027269, the State charged Green in a separate proceeding (FECR027484) with possession with intent to deliver cocaine, possession with intent to deliver marijuana, and two counts of failure to affix a drug

tax stamp on a taxable substance. With respect to these charges, Green agreed to a trial on the minutes of testimony. The district court found Green guilty on all four counts.

Green appeals his convictions in FECR027269 and FECR027484 in this consolidated appeal. He argues insufficient evidence supports his convictions and the district court abused its discretion in FECR027269 when it admitted evidence regarding the drugs found in the apartment.

## II. Scope and Standard of Review

We review challenges to the sufficiency of the evidence for correction of legal error. *See State v. Folkers*, 941 N.W.2d 337, 338 (Iowa 2020). We are bound to uphold a conviction if it is supported by substantial evidence. *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). "Evidence is considered substantial if, viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* "We consider all of the evidence in the light most favorable to the verdict, including all legitimate inference and presumptions that may fairly and reasonably be deduced from the evidence in the record." *Folkers*, 941 N.W.2d at 338. However, we do not limit our consideration to evidence supporting the verdict; instead we consider all evidence. *See State v. Nickens*, 644 N.W.2d 38, 40–41 (Iowa Ct. App. 2002).

## III. Discussion

*A. Possession of a firearm*

We first address Green's claim the State failed to provide sufficient evidence that he possessed a firearm. A person is a felon in possession of a firearm under Iowa Code section 724.26(1) (2018) when that person has a felony conviction and

"knowingly has under [their[2]] dominion and control or possession . . . a firearm." "Possession may be actual or constructive." *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016). Actual possession requires proof the defendant physically possessed the firearm at some point in time. *Id.* at 705 n.5. In this case, there is no evidence of actual possession, so the State must establish Green had constructive possession of the firearm.

> Constructive possession exists when the evidence shows the defendant "has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it." Constructive possession may be proved by inferences. Although the doctrine of constructive possession evolved in drug-possession cases, we apply the same principles in firearm cases.

*Id.* at 705 (citations omitted).

While possession may be inferred when a firearm is "found on property in the defendant's exclusive possession," additional proof is required when, as here, the property is jointly occupied. *Id.* And while a defendant's proximity to a firearm is pertinent, it "is not enough to show control and dominion." *Id.* at 706. Our supreme court has

> identified several nonexclusive factors to consider in determining whether the defendant possessed contraband discovered in jointly occupied structures:
> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a [firearm] among or near the person's personal belongings; (3) the person's fingerprints on the [firearm]; and (4) any other circumstances linking the person to the [firearm].

---

[2] This opinion uses "they" as a gender-neutral singular pronoun and "their" as a gender-neutral adjective. *See Their*, Merriam-Webster, https://www.merriam-webster.com/dictionary/their (recognizing "their" may be "used with an indefinite third person singular antecedent"); *They*, Merriam-Webster, https://www.merriam-webster.com/dictionary/they (noting "they" may be used to refer to a singular person whose gender is not revealed or whose gender identity is nonbinary).

*Id.* (quoting *State v. Hern*, 831 N.W.2d 149, 161 (Iowa 2013)).

Green posits there is insufficient evidence to prove he even lived at the apartment. We disagree. An officer observed Green regularly arrive at the apartment complex three to four nights a week. He was sleeping in the bedroom when officers arrived to execute the search warrant. His personal items littered the apartment, including the bedroom. And when being booked following his arrest, Green provided the apartment address as his home address.

However, the apartment was jointly occupied by Johnson. So we must find evidence of possession beyond Green's occupancy of the apartment. *See id.* But Green made no incriminating statements to suggest he knew of the firearm in the ceiling or had control over it, nor did Green make any incriminating actions following the firearm's discovery. Instead, Green maintained he had no knowledge of the firearm. And testing of the firearm revealed no fingerprints. So possession could only be established through the catchall factor allowing us to consider "any other circumstances linking [Green] to the [firearm]." *See id.* (citation omitted).

The State suggests we should conclude Green had sole access to ceiling where the firearm was located because, at five feet eleven inches tall, he is a foot taller than Johnson and had easier access to the seven-to-eight-foot-high ceiling. But "the right to maintain control is something more than the 'raw physical ability' to exercise control over" the firearm. *See State v. Carter*, 696 N.W.2d 31, 40 (Iowa 2005) (citation omitted). So Green's height advantage is inapposite. Moreover, Officer Bengtson testified he had to use a ladder and "stood on the bottom . . . rung or two" to get up to the ceiling and take a picture above the ceiling tile. And Officer

Bengtson described himself as "very much taller than Mr. Green." So neither Green nor Johnson had ready access to the ceiling without something to stand on and functionally had equal access and control over the space above the ceiling.

The State argues the discovery of the magazine in the box of Green's possessions is enough to establish Green possessed the magazine and, by extension, the firearm found in the ceiling. *See People v. Crump*, No. 335332, 2017 WL 6390066, at *2 (Mich. Ct. App. Dec. 14, 2017) (noting a jury could infer a magazine found among the defendant's belongings belonged to the defendant and supported witness testimony that the defendant possessed a firearm); *People v. Wright*, No. 246932, 2004 WL 1837697, at *1 (Mich. Ct. App. Aug. 17, 2004) (affirming a defendant's conviction for a firearm offense when the defendant had a magazine fitting the handgun in his pocket and the handgun was found under his car seat). We agree the evidence is sufficient to establish Green possessed the magazine found commingled with his person effects. But we disagree that this necessarily established his possession of the firearm concealed above the ceiling tile.[3]

While the firearm used 9-millimeter ammunition, and the magazine held 9-millimeter ammunition the State presented no evidence at trial establishing the magazine could be used with this particular firearm. So the jury was left to speculate as to the magazine's compatibility with the firearm. And speculation alone is not sufficient to establish guilt. *See State v. Dewitt*, 811 N.W.2d 460, 475

---

[3] The State also argues Green must also have had knowledge about the second magazine discovered elsewhere in the apartment. That may be, but we do not believe knowledge of a magazine equates to knowledge of a firearm concealed in the ceiling.

(Iowa 2012) ("[E]vidence of guilt must generate more than suspicion, speculation, or conjecture.").

In fact, Green's exhibit B, a report from the Iowa Department of Public Safety DCI Criminalistics Laboratory, identified the larger magazine tested, the magazine found with Green's possessions, as made by Pro Mag and stated it "fit and functioned in a Taurus PT111 9mm Luger pistol." And the report provided the smaller magazine recovered was a Taurus brand magazine "made for a PT111 9 mm Luger pistol." But the same report described the firearm recovered as a "Smith and Wesson SW9VE, 9mm Luger semiautomatic pistol." Without any further explanation to the contrary, this report suggests the magazines recovered are not necessarily compatible with the firearm.

Certainly the magazine found amongst Green's possessions raises our suspicions as to whether he possessed the firearm. But "evidence of guilt must generate more than suspicion, speculation, or conjecture." *Id.* And no other evidence presented at trial supports a finding that Green constructively possessed the firearm. So we reverse Green's possession for felon in possession in of a firearm.[4]

*B. Possession of cocaine*

Green also challenges the sufficiency of the evidence establishing he had possession of the cocaine found in the ceiling.[5] Again, because there is no

---

[4] Because we reverse Green's conviction for felon in possession of a firearm, we need not reach his claim that the district court abused its discretion in admitting certain evidence during trial.

[5] Because Green was tried on the minutes of testimony as to the charges related to his possession of cocaine, we look only to the minutes of testimony to determine if the evidence is sufficient.

evidence that Green had actual possession of the cocaine, we must determine whether Green had constructive possession of the cocaine. "Constructive possession exists when the evidence shows the defendant 'has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it.'" *Reed*, 875 N.W.2d at 705 (citations omitted). And because the apartment was jointly occupied, we consider the following factors:

> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Id.* at 706 (citation omitted).

Again, we note Green made no incriminating statements and made no incriminating actions when the cocaine was discovered. There is no evidence of Green's fingerprints on the bag containing the cocaine. The cocaine was also concealed in the ceiling and out of view. And there is no evidence in the minutes of testimony to suggest Green knew of cocaine's presence in the ceiling. So we conclude Green did not have knowledge of the cocaine. *See Nickens*, 644 N.W.2d at 41. Because there is no evidence Green had any knowledge of the cocaine, he could not have had constructive possession of it in the jointly occupied apartment. *See Reed*, 875 N.W.2d at 705–06.

Because possession of cocaine is a necessary element to possession with intent to deliver cocaine, we reverse Green's conviction for possession with intent to deliver cocaine and the corresponding conviction for failure to affix a drug tax stamp.

*C. Possession of marijuana*

Finally, Green argues there is insufficient evidence that he possessed any marijuana.[6]  On this point, we disagree.  We employ the same standards used to determine if there is sufficient evidence Green possessed marijuana as we used to determine if he possessed cocaine.  *See id.*  The evidence established that individualized baggies of marijuana were found in a Nike size eight-and-a-half shoe.  The shoes were on the same shelf as a box of Green's possessions.  Officers located a jar of marijuana under a dresser in the same room, and marijuana shake[7] peppered the floor.  Officers also found marijuana shake in Green's car.  Reviewing this evidence in the light most favorable to the State, we conclude a reasonable factfinder rationally could conclude Green was in possession of the jar of marijuana found under the dresser in the bedroom and the dime bags found in the shoes.  He admitted he was in the bedroom when officers arrived at the apartment, and most of his personal items were also found in the bedroom.  A reasonable factfinder could conclude Green was portioning marijuana out in the apartment into the individual-use portions from the jar, resulting in the marijuana shake, and transported it in his car, as evidenced by the marijuana shake in the car.  So we conclude the Stated established Green had knowledge of the marijuana and had the "authority or right to maintain control of it," establishing his possession.  *Id.* at 705 (citation omitted).

---

[6] Again, because Green was tried on the minutes of testimony as to the charges related to his possession of marijuana, we look only to the minutes of testimony to determine if the evidence is sufficient.

[7] Marijuana shake refers to "particles of marijuana leaves" that are spread around when a person prepares to smoke it or divide it up to sell it.  *See State v. McMullen*, 940 N.W.2d 456, 462 n.1 (Iowa 2019).

We recognize Green only challenges the sufficiency of the evidence as to whether he possessed the marijuana. He does not challenge the evidence supporting the intent to deliver element of his conviction for possession with intent to deliver marijuana. Likewise, he does not challenge the sufficiency of the evidence establishing the weight of the marijuana for purposes of the tax-stamp violation. *See* Iowa Code § 453B.1(3)(a)(2) (defining a "dealer" as a person who possesses "forty-two and one-half grams or more of processed marijuana or of a substance consisting of or containing marijuana"); .12(2) (stating "a dealer distributing, offering to sell, or possessing taxable substances without affixing the appropriate stamps, labels, or other official indicia is guilty of a class 'D' felony").

Accordingly, we affirm Green's conviction for possession with intent to deliver marijuana and his corresponding conviction for failure to affix a drug tax stamp.

## IV. Conclusion

Because the State provided sufficient evidence Green possessed marijuana, we do not disturb his corresponding convictions. But the State provided insufficient evidence Green possessed a firearm or cocaine. So we vacate his convictions for felon in possession of a firearm, possession with intent to deliver cocaine, and the corresponding conviction for failure to affix a drug tax stamp. We remand for dismissal of these charges.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**