# IN THE COURT OF APPEALS OF IOWA

No. 19-2128
Filed April 14, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ANDREW JOHN JAQUEZ,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, John M. Wright,

Judge.

A defendant appeals his conviction for drug possession. **CONVICTION**

**REVERSED AND REMANDED FOR RESENTENCING.**

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant

Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

The district court found Andrew Jaquez guilty of possession of methamphetamine on stipulated minutes of evidence. Jaquez appeals that conviction, challenging the proof of constructive possession. Because the minutes failed to establish that Jaquez was aware of the drugs and had dominion and control over them, the State did not meet its burden of proof. Thus we reverse Jaquez's conviction for possession of methamphetamine and remand for dismissal of that charge and resentencing on his other unchallenged convictions.[1]

## I. Facts and Prior Proceedings

Patrolling at 2:00 a.m., Burlington Police Officer Kegan Jacobson saw a Nissan Altima near the intersection of Summer and Maple Streets. The officer signaled for the car to stop because it had "an inoperable middle brake light." The Altima pulled over at the Circle K gas station. In his report, Officer Jacobson recalled that the Altima's driver, later identified as Jaquez, "flung open the driver's side door and started running." The officer pursued on foot. The officer later reported: "I was able to get within reaching distance and I was able to assist Jaquez to the ground." Jaquez continued to resist arrest, resulting in minor injuries to the officer.[2]

---

[1] Jaquez also challenges his sentence. But we need not settle that controversy because our finding of insufficient evidence on the felony count requires a remand for resentencing on the remaining counts.

[2] Officer Jacobson added: "It should also be known, that while assisting Jaquez to the ground, while he was resting [sic] and trying to flee away from me, that my black Apple I watch, valued at approximately $500, had the screen shattered and broken off of it, making it inoperable."

At Jacobson's request, fellow officers responded. They handcuffed Jaquez and secured him in a patrol car. They discovered two other passengers had fled the Altima. Officers swept the area but could not locate them. Police then searched the car. On the passenger side, the officers found a glass pipe that they suspected was used to smoke methamphetamine. On the rear floorboard behind the driver's seat, the officers found a baggie containing a white powder. The state crime laboratory later determined the substance was methamphetamine.

Meanwhile, Officer Jacob Jenkins read the suspect his *Miranda* rights. Jaquez volunteered some initial information about the owner of the car but declined to answer questions about the identity of his passengers. Officer Jenkins wrote in his report that a squad car video showed a female passenger leave by the rear passenger side door.[3] According to his report, "it appeared as she reached in the front passenger door for something and then fled on foot." The video also showed a male passenger "come out the driver's side door and also flee northbound."

In the wake of that traffic stop, the State charged Jaquez with three counts: (1) possession of a controlled substance, third offense, a class "D" felony, in violation of Iowa Code section 124.401(5) (2019); (2) interference with official acts causing bodily injury, a serious misdemeanor, in violation of section 719.1(1); and (3) criminal mischief in the fourth degree, a serious misdemeanor, in violation of section 716.1. Reaching a deal with the State, Jaquez agreed to plead guilty to

---

[3] The minutes referenced the State's intent to introduce video recordings into evidence at trial, but the district court did not mention those recordings in its ruling. And no videos appear in our appellate record.

the first two counts in return for the State recommending concurrent terms and forgoing a habitual offender enhancement.

But at the November 2019 hearing, the district court declined to accept Jaquez's guilty plea. The court engaged with Jaquez, who admitted driving the Altima stopped by police. Their exchange continued:

> THE COURT: All right. And did you get out of your vehicle at that point?
> THE DEFENDANT: Yep. Right when they pulled behind me I took—got out of the vehicle and took off running.
> THE COURT: And when—Well, let me ask you this. Did they catch you?
> THE DEFENDANT: Yes.
> THE COURT: And when they caught you, did they search you?
> THE DEFENDANT: Yes.
> THE COURT: And did they find methamphetamine on you?
> THE DEFENDANT: No.

Because the police did not find the drugs on Jaquez's person, the court explored the concept of constructive possession with him.

> THE COURT: And where was the methamphetamine found?
> THE DEFENDANT: In the backseat of the vehicle and on the passenger's side of the vehicle.
> THE COURT: So at the time that you were driving that motor vehicle up to the point when you stopped at Circle K and got out, did you know that there was methamphetamine in the vehicle?
> THE DEFENDANT: No.

Hearing this denial, the court turned to Assistant County Attorney Todd Chelf.

> THE COURT: So Mr. Chelf, how do you think the State can prove beyond a reasonable doubt Possession of Methamphetamine?
> MR. CHELF: Your Honor, reading the facts of the Complaint and Affidavit, I think the State would have officers testify that the methamphetamine was located in the area of the car in which he was located, and that would be what the State would be relying upon.

THE COURT: Well, let's see if I understand this correctly. Mr. Jaquez says that, No. 1, he was driving the vehicle, and the methamphetamine found was in the back seat and the passenger's seat; and, No. 2, he did not know the methamphetamine was in the vehicle at the time he was arrested. So what else does the State have to prove this beyond a reasonable doubt?

MR. CHELF: Your Honor, at this time the State has probable cause to proceed on this matter. I don't know that depositions have been taken and that additional evidence has been developed in this case.

Not reassured by the prosecutor's description of the available evidence, the court told Jaquez, "I cannot take your guilty plea in this case, and let me tell you why. Now, I noticed from your reaction from what I said that it might be one of those reactions that, I just want to get it over with." Jaquez responded: "I know." In explaining why it was rejecting his guilty plea, the court delivered a primer on constructive possession: "You have to know that there's methamphetamine in your vehicle, and that you knowingly possessed it in some fashion." The court continued:

But it sounds to me like you didn't know it was there. And here's the thing, if you were to go to trial and the State could not prove beyond a reasonable doubt that you knew the methamphetamine was in your possession, you may not be convicted of this.

Now, I can't take a guilty plea from somebody who says that he did not know that the controlled substance was in the car. And you certainly didn't have it on you when you were arrested.

The court then set the matter for trial. In early December 2019, Jaquez appeared for a bench trial.[4] Neither side presented live testimony. The same judge who rejected the guilty plea ruled that the State proved beyond a reasonable

---

[4] That same day, the State supplemented its minutes of evidence but only to add a state criminalist as a witness who expected to testify about lab tests confirming the seized baggie contained methamphetamine. The attached drug chemistry report showed the "crystalline substance" weighed one gram.

doubt that Jaquez committed the offense of felony possession of methamphetamine based on the minutes of evidence.[5] The court also found Jaquez guilty of interference and criminal mischief. The court ran those three sentences concurrently but consecutively to a pending probation-revocation case in Wapello County. Jaquez appeals his drug conviction and the consecutive sentence.

## II. Scope and Standard of Review

We review Jaquez's challenge to the sufficiency of evidence for errors at law. *See State v. Myers*, 924 N.W.2d 823, 827 (Iowa 2019). We generally apply the same standard in reviewing the verdict in a bench trial as in a jury trial. *Id.* But in jury-waived cases, the court's findings of fact have the effect of a special verdict—binding on appeal if supported by substantial evidence.[6] *State v. Fordyce*, 940 N.W.2d 419, 425 (Iowa 2020). If the court's verdict is supported by substantial evidence, we will affirm. *Myers*, 924 N.W.2d at 826. We view the record in the light most favorable to the court's decision. *Id.* at 827. Still, "the evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *See State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002).

---

[5] Jaquez stipulated to two prior drug offenses, establishing this was his third offense.

[6] In cases tried without a jury, the court is supposed to "find the facts specially and on the record, separately stating its conclusions of law and rendering an appropriate verdict." Iowa R. Crim. P. 2.17(2); *see State v. Sayre*, 566 N.W.2d 193, 196 (Iowa 1997) (requiring court to follow rule even when defendant is stipulating to a bench trial on the minutes). Here, the court's ruling sets out neither its findings of fact nor conclusions of law, skipping right to the verdict. Although Jaquez does not complain about the court's failure to comply with rule 2.17(2), its shortcut hampers our ability to review for substantial evidence.

## III. Analysis

Jaquez contends the minutes contained insufficient evidence that he possessed the baggie of methamphetamine. Because Jaquez did not have actual possession of the drugs, the parties agree that constructive possession is the issue. *See State v. Atkinson*, 620 N.W.2d 1, 3 (Iowa 2000) ("[A]ctual possession requires substances to be found on the defendant's person, and that was not the case here."). "The existence of constructive possession turns on the peculiar facts of each case." *Webb*, 648 N.W.2d at 79.

To prove constructive possession, the State had to show three elements: (1) Jaquez exercised dominion and control over the contraband, (2) he knew of its presence, and (3) he knew it was a controlled substance. *See Atkinson*, 620 N.W.2d at 3. When, as here, the police find the drugs in a car, we apply "specific rules" for assessing constructive possession. *Id.* at 3–4. Because Jaquez was not the sole occupant of the Altima, we may not infer that he knew about the methamphetamine or had the ability to control it. *See State v. Carter*, 696 N.W.2d 31, 39 (Iowa 2005) (holding inference of possession arising from exclusive possession of premises cannot assist the State where defendant was in joint possession of vehicle in which drugs were located).

Without that inference, the State must rely on other circumstances in the record. *Id.* For example, we might ask: (1) were the drugs in plain view? (2) were they intermingled with the accused's personal effects? (3) were they found on the same side of the car seat as the accused or immediately next to him? (4) did the accused own the vehicle? and (5) did he engage in suspicious activity? *See id.* Even if the answer is yes to some of these questions, we must still decide whether

all the facts lead to a reasonable inference that the accused knew the drugs were present and could exercise control and dominion over them. *See id.* That right to maintain control goes beyond a "raw physical ability" to reach out and grab the drugs. *State v. Bash*, 670 N.W.2d 135, 139 (Iowa 2003). Rather, the accused must have a proprietary interest or an immediate right to take possession of the controlled substance. *Id.*

To start with plain view, Officer Jenkins wrote in his report: "standing around the car, I observed a small clear Ziploc style bag of a white crystalline substance on the rear driver's side floorboard of the vehicle." Although the baggie may have been in plain view from the officer's vantage point peering into the back of the car, it would not have been in plain view of Jaquez from the driver's seat.[7] *Contrast State v. McMullen*, 940 N.W.2d 456, 462 (Iowa Ct. App. 2019) (rejecting claim that defendant did not know contraband was in the vehicle when "reasonable person would have observed the open exposed cup in the console containing marijuana").

Second, the record does not show that any of Jaquez's personal belongings were near the drugs. *Contrast State v. Kemp*, 688 N.W.2d 785, 790 (Iowa 2004) (holding State proved constructive possession when police found rolling papers used for smoking marijuana among accused's personal effects in console of car he owned and had been driving).

---

[7] The State also notes that a glass pipe, suspected of being paraphernalia, was in plain view on the passenger seat. The minutes do not state that the pipe was tested for drugs. It also appears that Jaquez had a front-seat passenger who would have obstructed his view of any item left on the seat. And the pipe was not among Jaquez's belongings.

Third, the baggie was on the driver's side of the car but on the rear floorboard.  The State argues that it is reasonable to infer that Jaquez "tossed it behind him before or as he exited."  But it is equally reasonable to infer that one of the other passengers tossed it there without his knowledge.  Moreover, Officer Jacobson reported that Jaquez bailed from the Altima right after stopping; the officer did not mention seeing any furtive movements while Jaquez was still in the car.  And even if the drugs were within Jaquez's reach, constructive possession requires more than proximity to the contraband.  *See State v. Cashen*, 666 N.W.2d 566, 572 (Iowa 2003) (holding accused's position near drugs, though pertinent, was not enough to show control and dominion);[8] *see also State v. Cain*, No.19-0699, 2020 WL 2893250, at *6 (Iowa Ct. App. June 3, 2020) ("We can only speculate whether Cain was able to 'maintain control over the drugs or have the right to control the drugs' that were in the back of the van.").

Fourth, Jaquez did not own the vehicle.  The minutes show that he borrowed the car from the registered owner and had not returned it when promised.  *Contrast McMullen*, 940 N.W.2d at 462 (finding constructive possession when car belonged to accused).

Fifth, Jaquez *did* engage in suspicious activity.  He fled the car after the officer pulled him over.  And after losing the foot chase, he resisted arrest.  The State highlights his "incriminating flight" as the lynchpin for constructive

---

[8] In *Cashen*, the court also noted that police did not find the accused's fingerprints on the baggie of marijuana.  666 N.W.2d at 572.  Likewise, the minutes do not show that authorities found Jaquez's prints on the baggie of methamphetamine.

possession.[9]   But Jaquez argues the motivation for his flight was ambiguous because he was also wanted on an out-of-county arrest warrant and driving with a suspended license.   What's more, the two unidentified passengers also fled,[10] casting their own motivations into the mix.   *Contrast Carter*, 696 N.W.2d at 40 (finding driver had constructive possession when driver quickly exited vehicle, but passenger made no furtive movements).

Even viewing the minutes in a light favorable to the court's verdict, we find insufficient evidence to prove constructive possession beyond a reasonable doubt. The minutes provide no insight into how the baggie ended up on the backseat floorboard of the borrowed Altima or how long it had been there.   *See Cashen*, 666 N.W.2d at 572.   Granted, sometimes the accused's flight is potent proof.   Not so here.   The State did not tie Jaquez's evasive conduct to any knowledge that the methamphetamine was in the car.   The police did not discover the drugs until after he ran.   So this was not a case in which the accused engaged in incriminating actions when confronted with police finding contraband.   *See Kemp*, 688 N.W.2d at 789; *see also State v. Wilson*, 878 N.W.2d 203, 214 (Iowa 2016) ("The inference that flight was motivated by the defendant's desire to avoid prosecution for the crime charged is strongest when the defendant flees in its immediate aftermath or shortly after being accused thereof.").   For all we know, his outstanding warrant or

---

[9] Our supreme court has described "headlong flight" as "the consummate act of evasion" and "suggestive of some wrongdoing" when provoked by the presence of a police vehicle.  *State v. Kreps*, 650 N.W.2d 636, 648 (Iowa 2002).  But recall the question in *Kreps* was whether flight triggered reasonable suspicion for an investigatory stop.  By contrast, the State relies on Jaquez's flight to fuel its burden to prove possession beyond a reasonable doubt.

[10] When questioned by an officer, a man matching the description of the fleeing passenger denied any involvement with Jaquez.

suspended license may have prompted him to flee. Any link between Jaquez's suspicious conduct and the baggie was speculative on this record.

Beyond his flight, few facts support an inference of constructive possession. For instance, the State offered no information from the passengers to incriminate Jaquez. And Jaquez made no declarations suggesting the drugs were his. When viewed as a whole, the minutes do not provide substantial evidence supporting the court's verdict. Thus, we reverse Jaquez's possession conviction and remand for dismissal of that charge, as well as resentencing on the unchallenged convictions.

**CONVICTION REVERSED AND REMANDED FOR RESENTENCING.**